IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | | |
|---|---|---|
| JONATHAN LALEWICZ, | : | |
| Plaintiff, | : | Civil Action No. 4:24-cv-00044-TRM |
| vs. | : | |
| WARNERMEDIA DIRECT, LLC, | : | |
| Defendant. | | |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION**


Britt K. Latham
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201-3001

Michael W. McTigue Jr. (admitted *pro hac vice*)
Meredith C. Slawe (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Counsel for Defendant*
*WarnerMedia Direct, LLC*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iv

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 5

A. Plaintiff's Counsel, Plaintiff, and Mass Arbitration ........ 5

B. Users Must Agree to the Terms of Use To Access HBO Max or Max ........ 6

C. Plaintiff Creates an HBO Max Account Under the Superseded Terms ........ 7

D. Defendant Updates the Terms and Provides Notice to Plaintiff ........ 7

E. The Updated Terms Designated NAM as the Arbitral Forum ........ 8

F. Plaintiff's Counsel Send to Defendant Thousands of Near Identical Purported "Opt Outs" ........ 9

G. Plaintiff's Counsel Submits Thousands of Near Identical "Pre-Arbitration Notices of Dispute" to Defendant ........ 9

H. Defendant Replaces HBO Max with Max and Implements the Max Terms ........ 10

I. Plaintiff Agrees to the Max Terms ........ 11

J. Plaintiff's Counsel Seeks To Initiate Mass Arbitration Before the AAA, But the AAA Declines To Administer the Arbitrations ........ 12

K. Plaintiff's Counsel Seeks Relief in the U.S. District Court for the Central District of California (the *Brooks* Action) ........ 12

L. The *Brooks* Action Is Transferred to New York ........ 13

M. Defendant Moves To Compel Arbitration Before NAM in the *Brooks* Action ........ 13

N. Plaintiff's Counsel File Four Actions in Alabama State Court ........ 13

O. Plaintiff's Counsel File This Action and Two Related Actions in Tennessee State Court While the Alabama Actions Remained Pending ........ 14

P. Defendant Removes this Action and Plaintiff Moves To Remand ........ 15

ARGUMENT ........ 15

I. PLAINTIFF IS BOUND BY THE UPDATED TERMS THAT REQUIRE HIS CLAIMS TO BE ARBITRATED BEFORE NAM ....................15

A. Plaintiff Admits He Is Bound By the Max Terms ....................16

B. Plaintiff Is Bound by the Max Terms Under Contract Principles....................17

1. Defendant Provided Conspicuous Notice of the Max Terms ....................17

2. Plaintiff Manifested Assented to the Max Terms ....................18

C. Plaintiff's VPPA Claims Must Be Arbitrated Before NAM Pursuant To the Updated Terms....................19

D. There Was No Right to Reject to Max Terms, Including the Arbitration Agreement Contained Therein....................20

E. Plaintiff Has Waived the Right To Compel Arbitration Under the Superseded Terms ....................21

F. The Small Claims Carveout in the Arbitration Clause Does Not Apply ....................23

II. PLAINTIFF SHOULD BE ENJOINED FROM COMMENCING ARBITRATION UNTIL HE COMPLIES WITH THE PRE-FILING REQUIREMENTS UNDER THE UPDATED TERMS ....................23

III. THIS ACTION MUST BE STAYED PENDING ARBITRATION....................24

CONCLUSION....................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Advanced Disposal Services Tennessee Holdings v. Lusk Disposal Services, Inc.*, 478 F. Supp. 3d 716 (E.D. Tenn. 2020) ..... 17

*AFS Logistics, LLC v. Cochran*, No. 3:16-cv-3139, 2017 WL 4947512 (M.D. Tenn. Oct. 31, 2017) ..... 22

*Brooks v. WarnerMedia Direct LLC*, No. CV 23-7579-GW-MRWx, 2023 WL 10706636 (C.D. Cal. Dec. 1, 2023), *adopted*, No. CV 23-7579-GW-MRWx, 2023 WL 10705852 (C.D. Cal. Dec. 4, 2023) ..... 13

*Brown v. Peregrine Enterprises, Inc.*, No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) ..... 21, 22

*Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023) ..... 18, 19

*Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825 (S.D.N.Y. 2020) ..... 18

*Garcia v. Nabfly, Inc.*, No. 23 Civ. 1162 (PGG), 2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024) ..... 19

*GateGuard, Inc. v. MVI Systems LLC*, No. 19 Civ. 2472 (JPC), 2021 WL 4443256 (S.D.N.Y. Sept. 28, 2021) ..... 16

*Getz v. Verizon Communications, Inc.*, No. 18cv4652(DLC), 2018 WL 5276426 (S.D.N.Y. Oct. 24, 2018) ..... 16

*Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444 (6th Cir. 2005) ..... 17

*Hastings v. Nifty Gateway, LLC*, No. 22 Civ. 10517 (AT), 2024 WL 1175196 (S.D.N.Y. Mar. 19, 2024) ..... 19

*Levy v. Credit Plus, Inc.*, No. 21-CV-5541 (KMK), 2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023) ..... 17

*Lonstein Law Office, P.C. v. Evanston Insurance Co.*, No. 20-cv-9712 (LJL), 2022 WL 72302 (S.D.N.Y. Jan. 6, 2022) ..... 15

*Masco Cabinetry Middlefield, LLC v. Cefla North America, Inc.*, 637 F. App’x 192 (6th Cir. 2015) ..... 17

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017)....................17, 18

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)....................21

*Nicholas v. Wayfair Inc.*,
410 F. Supp. 3d 448 (E.D.N.Y. 2019)....................18

*Reaper v. ACE American Insurance Co.*,
No. 21-cv-05876-HSG, 2022 WL 3348575 (N.D. Cal. Aug. 12, 2022)....................20

*Seguros Banvenez, S.A. v. S/S Oliver Drescher*,
761 F.2d 855 (2d Cir. 1985)....................21

*Sharp v. Terminix International, Inc.*,
No. 2:18-cv-02072-SHM-dkv, 2018 WL 3520140 (W.D. Tenn. July 20, 2018)....................17

*Smith v. Spizzirri*,
144 S. Ct. 1173 (2024)....................24

*Southern Systems, Inc. v. Torrid Oven Ltd.*,
105 F. Supp. 2d 848 (W.D. Tenn. 2000)....................21

*Tractebel Energy Marketing, Inc, v. AEP Power Marketing, Inc.*,
487 F.3d 89 (2d Cir. 2007)....................17

*United Paper Machinery Corp. v. DiCarlo*,
19 A.D.2d 143 (4th Dep't 1963), *aff'd*, 14 N.Y.2d 814 (1964)....................22

*Xue Qin Liu v. TD Ameritrade, Inc.*,
No. 18-CV- 6764 (NGG) (CLP), 2020 WL 2113219 (E.D.N.Y. May 4, 2020)....................17

**STATUTES**

9 U.S.C. § 3....................24

18 U.S.C. § 2710....................1

28 U.S.C. § 1446(b)....................2

Tenn. Code Ann. § 27-5-108....................15

**RULES**

Fed. R. Evid. 901(a)....................21

## PRELIMINARY STATEMENT

As Defendant's motion to transfer explains, this action should be transferred to the U.S. District Court for the Southern District of New York because the very agreement Plaintiff has conceded governs his claim contains an unambiguous forum-selection clause providing that this dispute must be heard in New York. Whether this action is transferred or not, however, Plaintiff should be compelled to arbitrate his claims before National Arbitration and Mediation ("NAM").[1]

This action is part of a multi-pronged, multi-state strategy by Plaintiff's counsel Keller Postman LLC ("Keller") and Davis & Norris, LLP to improperly leverage the threat of massive arbitration fees to coerce a settlement of meritless claims.[2]

Plaintiff alleges that he used Defendant's video streaming platform HBO Max. He is just one of thousands of individuals on whose behalf Plaintiff's counsel have threatened substantively identical arbitrations against Defendant based on their alleged use of HBO Max. [3] In an about-

---

[1] Defendant does not waive and expressly reserves all defenses and arguments, including defenses under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[2] Although Garth Segroves is counsel of record for Plaintiff in this action, Keller and Davis & Norris, LLP are involved here and are orchestrating the mass arbitration on behalf of many claimants including Plaintiff.

[3] The threatened arbitration claims are almost certainly frivolous on their merits. Plaintiff's counsel allege that each claimant they represent was an HBO Max subscriber whose viewing information Defendant disclosed to Facebook in violation of the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 ("VPPA"). That theory is premised on an elaborate set of preconditions involving a given user's means of access to the HBO Max service and use of the Facebook social media platform. Yet counsel do not appear to have performed even a minimal level of diligence to assess whether members of the claimant pool have satisfied those preconditions such that they might be able to state a claim. Defendant's preliminary analysis reveals that an overwhelming majority of the putative claimants either do not appear to be HBO Max subscribers *at all*, or they never accessed hbomax.com on a web browser—which are just two of the essential predicates of Plaintiff's counsel's theory of liability—and thus could not possibly have a claim. For the remaining claimants—including Plaintiff—Plaintiff's counsel have not confirmed that any of the

face, Plaintiff has now filed an action in Tennessee state court (rather than an arbitration). Defendant removed Plaintiff's action to this Court. Because Plaintiff is bound by an arbitration clause designating NAM as the arbitral forum for consumer disputes, he must be compelled to arbitrate his claims before NAM.

Plaintiff has expressly conceded that his claim is governed by Terms containing a mandatory arbitration clause designating NAM as the arbitral forum. (ECF No. 12 at 2, 5-6 (Motion To Remand).) He asserts, however, that he can file this action in court because the arbitration clause permits a claimant to pursue a dispute in small claims court. Plaintiff is incorrect: that exception applies only "so long as the action is not removed." Because Defendant removed this action, Plaintiff can no longer proceed in small claims court in Tennessee or elsewhere.[4]

Plaintiff might contend that the arbitration clause in Defendant's current Terms of Use does not apply because his claim is governed by an arbitration clause in a superseded version of the HBO Max Terms of Use (the "Superseded Terms"), which designate the American Arbitration Association (the "AAA") as the arbitration provider. If that is Plaintiff's contention, he is wrong and he has admitted as much. On December 20, 2022, Defendant updated the

---

other essential preconditions have been met. Remarkably, several claimants who purportedly authorized Plaintiff's counsel to file arbitration claims with the AAA are deceased.

[4] A claimant may bring an arbitral claim in small claims court only if the action remains in the small claims court. Plaintiff filed this action in small claims court (the General Sessions Court, Coffee County, Tennessee), but he has not agreed to keep his action in that court. He initially demanded to arbitrate the claim and then, after filing this action, refused to stipulate that he would not seek relief that would exceed the jurisdiction of small claims court, seek to transfer or appeal the action from that court, or refile the action in another court. Plaintiff's refusal to agree to this stipulation was a transparent attempt to prevent Defendant from removing the action if Plaintiff took action to cause the claims to be heard in a court of general jurisdiction (i.e., contrary to the small claims court exception in the Terms) outside the 30-day removal deadline. 28 U.S.C. § 1446(b).

Superseded Terms with various amendments, including amending the arbitration clause to (among other things) designate NAM as the arbitration provider. On May 23, 2023, Defendant replaced HBO Max with its enhanced service Max, pursuant to new Terms of Use. Both the updated HBO Max Terms and the Max Terms (collectively, the "Updated Terms") require that consumer claims be brought before NAM. Plaintiff has expressly conceded that the Updated Terms apply to this action. (ECF No. 12 at 2, 5-6 (Motion To Remand).) As such, Plaintiff must pursue his claims before NAM.

This action, and the two virtually identical actions pending in this court, are the latest episode in a troubling pattern of gamesmanship by Plaintiff's counsel. More than a year ago, Plaintiff's counsel provided notice to Defendant that the thousands of claimants they purport to represent sought to vindicate their rights in arbitration under the Terms. Plaintiff's counsel then filed arbitrations with the AAA on behalf of 1,030 of these claimants under the Superseded Terms. Plaintiff's counsel sought to apply the Superseded Terms in an attempt to take advantage of a fee structure that the AAA imposes at the outset of a "mass arbitration" filing. Plaintiff's counsel hopes to leverage the threat of those fees to extort an early settlement having nothing to do with the merits of the claims. The AAA declined to administer those arbitrations, and for good reason: Defendant's arbitration clause does not designate the AAA as the arbitral forum—it designates NAM.

Unhappy with that outcome, Plaintiff's counsel petitioned the U.S. District Court for the Central District of California—the wrong forum under the unambiguous New York forum-selection clause in the Terms—for an order mandating that Defendant register an outdated and superseded arbitration clause with the AAA. The California court granted Defendant's motion to transfer the petition to the U.S. District Court for the Southern District of New York, where there

are competing motions to compel pending. Plaintiff's counsel has moved to compel arbitration before the AAA under the Superseded Terms, and Defendant has cross-moved to compel arbitration before NAM under the Updated Terms.

Plaintiff's counsel's maneuvering and litigation tactics did not stop there. In February 2024, Plaintiff's counsel filed claim forms and one-sentence "complaints" against Defendant asserting claims in the District Court of Colbert County, Alabama, on behalf of four purported HBO Max users. Each of the Alabama plaintiffs had previously submitted notices of dispute to Defendant through Plaintiff's counsel or appeared on claimant lists provided by Plaintiff's counsel providing notice of threatened arbitrations—not court proceedings—in connection with their purported claims. Plaintiff's counsel nowhere explained why they threatened arbitrations on behalf of these putative claimants and then filed actions on their behalf in court.[5] After Defendant removed those cases, Plaintiff's counsel promptly voluntarily dismissed them without explanation. Now, Plaintiff's counsel has surfaced in yet another jurisdiction and forum—this time, in Tennessee.

Plaintiff's counsel's game of arbitral and judicial whack-a-mole must end. *See Golub Capital, LLC v. NB Alternatives Advisers, LLC*, 21 CV 3991 (LJL), tr. at 68 (S.D.N.Y. Jun. 17, 2021) (Ex. 1) (denying motion for preliminary injunction where plaintiff employed a "litigation strategy . . . akin to a game of 'Whac-A-Mole'").[6] For the foregoing reasons, Defendant requests

---

[5] The court in which Plaintiff's counsel filed the Alabama actions is not a small claims court and Plaintiff's counsel had no basis to file in that court under the Terms. Plaintiff's counsel filed those cases in that court in a transparent attempt to obtain discovery outside the arbitral process.

[6] "Ex." citations herein refer to the Declaration of Michael W. McTigue Jr., filed herewith. "Decl." citations refer to the Declaration of Naomi Waibel, filed herewith.

that the Court (i) compel Plaintiff to arbitrate his claims before NAM as he is required to do under the Updated Terms, (ii) mandate that Plaintiff comply with the pre-arbitration notice and informal dispute resolution requirements in the Updated Terms prior to initiating arbitration, and (iii) stay this action during the pendency of the arbitral proceedings.

## FACTUAL BACKGROUND

### A. Plaintiff's Counsel, Plaintiff, and Mass Arbitration

Plaintiff's counsel are lawyers from Keller and Davis & Norris, LLP.[7] Keller has been recognized as the firm that has "led" a "mass-arbitration avalanche."[8] The U.S. Chamber of Commerce has described the mass arbitration tactic thus: "By simultaneously filing thousands of arbitration demands with identical claims, plaintiffs' lawyers seek to trigger an immediate obligation to pay millions of dollars in fees." *Mass Arbitration Shakedown* at 18. "Their goal appears not to be to obtain simultaneous decisions on the merits—the firms filing mass arbitrations appear to lack the resources to manage these large numbers of claims." *Id*. "Rather, the goal appears to be to use the threat of a huge fee payment to force companies to settle the claims *en masse*, regardless of the underlying merits." *Id.*

Keller has been sued for its efforts to weaponize the arbitration process for improper purposes at the expense of businesses, consumers, courts, and arbitration bodies. On May 31, 2024, Keller was accused of orchestrating a "scheme to manufacture and file meritless arbitration

---

[7] Plaintiff's counsel and Troxel Law LLP ("Troxel") have sent Defendant a list of putative claimants who Plaintiff's counsel and Troxel purported to represent and on whose behalf Plaintiffs' counsel threatened to pursue identical claims in arbitration. (Decl. ¶ 21.) That list included Plaintiff. (*Id*. ¶ 22.) Plaintiff is also represented by the Law Office of Garth Segroves, counsel of record for Plaintiff in this action.

[8] Andrew J. Pincus et al., U.S. Chamber of Com. Inst. for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* 19 (Feb. 2023) ("*Mass Arbitration Shakedown*"), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf.

claims [against a business] en masse." (Ex. 2 ¶ 1 (Complaint, *Tubi, Inc. v. Keller Postman LLC*, No. 24-cv-01616 (D.D.C. filed May 31, 2024).) The suit alleges that Keller's objective was "to extort a quick settlement in which Keller Postman would benefit above all others" regardless of the merits of the claims asserted. (*Id.* ¶ 67.) The suit further alleges that Keller's "conduct is riddled with ethical violations from beginning to end" and, among other things, caused customers to breach their contractual obligations with the defendant under the arbitration agreement they were seeking to enforce to undertake an informal resolution process before pursuing claims. (*Id.* ¶ 3.) Keller's conduct was allegedly "[i]n direct opposition to the interests of [its] clients." (*Id.* ¶ 67.)

Keller routinely partners with Troxel to pursue mass arbitrations. *See id.* at 21 & 67 n.94. Troxel published social media solicitations seeking claimants in connection with Plaintiff's counsel's mass arbitration efforts here and is identified as co-counsel on pre-arbitration notices of dispute submitted on behalf of Plaintiff and other claimants. (*See* Ex. 3; Decl. ¶¶ 20-21.) Plaintiff is just one of thousands of individuals whom Plaintiff's counsel purport to represent in a "mass arbitration" against Defendant.

**B. Users Must Agree to the Terms of Use To Access HBO Max or Max**

Defendant operated HBO Max, a subscription-based video-on-demand streaming platform, which Defendant subsequently replaced with its enhanced streaming platform, Max. (Decl. ¶¶ 3-4.) HBO Max customers were required to create an account to activate an HBO Max subscription. (*Id.* ¶ 5.) This process included a presentation of the HBO Max Terms of Use, which subscribers were required to accept to access the platform. (*Id.*) Max customers are

likewise required to create an account to activate their Max subscription and must accept the Max Terms to access the platform.[9] (*Id.* ¶ 7.)

**C. Plaintiff Creates an HBO Max Account Under the Superseded Terms**

On December 14, 2020, Plaintiff created an HBO Max account using the email address jlalewicz5578@gmail.com and accepted the Superseded Terms, including its arbitration provisions. (Decl. ¶ 17.) Plaintiff admits that he agreed to the Superseded Terms. (ECF No. 12 at 2, 5-6 (Motion To Remand).)

All versions of the HBO Terms of Use, including the Superseded Terms, contain a substantially identical "Governing Law and Venue" provision providing that the "Terms shall be governed by the laws of the State of New York, without regard to conflict of law principles." (Ex. 4 § 5.9 (the Superseded Terms).) The Superseded Terms also provided Defendant "reserve[s] the right to modify these Terms or change any part of the Platform at any time." (Ex. 4 § 5.12.) The Superseded Terms further provide that by "continuing to use the Platform after any revised Terms come into effect and, in the case of any Subscription, your decision not to cancel your Subscription before it renews or within any relevant notice period, means you agree to be bound to the changes." (Ex. 4 § 5.12.)

**D. Defendant Updates the Terms and Provides Notice to Plaintiff**

On December 20, 2022, Defendant updated the HBO Max Terms of Use. (Ex. 5; Decl. ¶ 10.) Defendant provided notice of this update through (i) direct emails to all subscribers and former subscribers, including Plaintiff and (ii) pop-up notifications within the HBO Max streaming platform. (Decl. ¶¶ 10-13.) Defendant's email notification provided:

> HBO Max has updated our **Terms of Use** ("Terms"). The updates contain important information about your legal rights, including updates to the arbitration clause and

[9] All versions of the Terms require compliance with pre-arbitration dispute resolution provisions. (Ex. 4 § 5.4(b); Ex. 5 § 5.4(b); Ex. 6 § 5.4(b) (Max Terms).)

> other rules and procedures that govern the resolution of disputes between you and HBO Max. The updates won't affect the way you use HBO Max.
>
> These updated terms will apply as of today for new subscribers. For prior and existing subscribers, like you, the terms apply beginning on the date your subscription renews or 30 days from today, whichever comes first. You can review the new updated Terms **here**.
>
> Your continued subscription to and/or access of HBO Max will confirm that you have reviewed and agreed to the updated Terms of Use.

(Decl. ¶¶ 11-12.) The email also provided two hyperlinks to a full presentation of the Updated HBO Max Terms, indicated in purple above. (*Id.*)

The in-app pop-up that contained a link to the Updated HBO Max Terms stated:

> We've updated our Terms of Use. These updates contain important information about your legal rights, including an updated arbitration clause. By continuing to subscribe to and/or access HBO Max, you agree to be bound by the updated Terms. Read the updated Terms at www.hbomax.com/terms-of-use/en-us.

(*Id.* ¶ 13.) The Updated HBO Max Terms provided that the updated arbitration agreement would apply to "claims that arose before this or any prior Agreement." (Ex. 5 § 5.4(a).)

Plaintiff continued his HBO Max subscription, accessed the HBO Max application, and streamed videos after December 20, 2022. (Decl. ¶ 18.) By continuing to subscribe to and access the HBO Max platform after being provided notice via the email and in-app pop-up notification, Plaintiff affirmatively agreed to the Updated Terms.

Plaintiff admits that he agreed to the updated HBO Max Terms. (ECF No. 12 at 2, 5-6 (Motion To Remand).)

### E. The Updated Terms Designated NAM as the Arbitral Forum

The Updated HBO Max Terms amended the arbitration clause in the Superseded Terms, including by designating NAM as the arbitration forum for disputes. (Ex. 5 § 5.4(c).) The change to the provision changed the arbitration administrator but not the scope of its coverage. The updated HBO Max Terms, like the Superseded Terms, provided that "[t]o the fullest extent

permitted by applicable law, HBO Max and you agree to arbitrate all disputes and claims," with narrow exceptions for certain bodily injury and intellectual property disputes not applicable to Plaintiff's claim. (Ex. 5 § 5.4(a).) Plaintiff concedes that the arbitration clause applies to his claim. (ECF No. 12 at 5-6 (Motion To Remand).)

The arbitration clause in the Updated Terms, and in the Superseded Terms, contains a carveout for small claims proceedings unless removed to federal court (among other conditions):

> Notwithstanding the [mandatory arbitration provisions], either party may elect to have claims heard in small claims court seeking only individualized relief, **so long as the action is not removed or appealed to a court of general jurisdiction.**

(Exs. 4 § 5.4(a), 5 § 5.4(a), 6 § 5.4(a) (emphases added).)

### F. Plaintiff's Counsel Send to Defendant Thousands of Near Identical Purported "Opt Outs"

Between December 23, 2022, and January 24, 2023, Plaintiff's counsel sent Defendant thousands of substantively identical documents, each titled "Rejection of Recent Changes to HBO Arbitration Agreements" (the "Purported Opt-Outs"). Plaintiffs' counsel sent these Purported Opt-Outs on behalf of Plaintiff and every other individual they claim to represent, including thousands of individuals who never subscribed to HBO Max. (Decl. ¶ 23; Ex. 7.) Plaintiff concedes that his Purported Opt-Outs were ineffective and that he agreed to the updated HBO Max Terms of Use and, subsequently, to the Max Terms. (ECF No. 12 at 2, 5-6.)

### G. Plaintiff's Counsel Submits Thousands of Near Identical "Pre-Arbitration Notices of Dispute" to Defendant

Under the Updated Terms, a user who intends to initiate arbitration must first send Defendant a written Notice of Dispute meeting certain requirements. (Ex. 5 § 5.4(b); Ex. 6 § 5.4(b).) A user may not initiate arbitration until 60 days after submitting a compliant Notice of Dispute. (*Id.*)

Between January 5, 2023, and April 14, 2023, Plaintiff's counsel sent letters to Defendant that collectively contained thousands of substantively identical "Pre-Arbitration Notice[s] of Dispute." (Decl. ¶ 21.) Among these was a notice of dispute on behalf of Plaintiff sent on January 5, 2023. (Ex. 3.) The notices of dispute alleged that Defendant violated the VPPA, and claimed the notices of dispute were being sent pursuant to the arbitration clause in the Superseded Terms. (*See id.*) Based on Defendant's review of the notices of dispute and Defendant's business records, thousands of individuals on whose behalf Plaintiff's counsel sent notices of dispute never even had an HBO Max account. (Decl. ¶ 21.)

Plaintiff's notice of dispute does not include the contents mandated under the Updated Terms, such as his subscription status and history, the nature of his claim, or a certification verifying the accuracy of its contents. (Ex. 3 (Notice of Dispute).)

### H. Defendant Replaces HBO Max with Max and Implements the Max Terms

On May 23, 2023, Defendant replaced HBO Max with Max. (Decl. ¶¶ 4, 14.) On that same date, Defendant implemented the Max Terms that superseded any prior HBO Max Terms of Use with respect to all users of Max. (Ex. 6.) Specifically, Section 5.4(g) of the Max Terms provides:

> You agree that any arbitrations between you and Max will be subject to this Section 5.4 and not to any prior arbitration agreement you had with Max, and, notwithstanding any provision in this Agreement to the contrary, you agree that this Section 5.4 amends any prior arbitration agreement you had with Max, including with respect to claims that arose before this or any prior arbitration agreement.

(*Id.* § 5.4(g).) The Max Terms contain an arbitration clause that is substantially identical to the arbitration clause in the Updated HBO Max Terms. (*Id.* § 5.4.)

Beginning on May 23, 2023, every HBO Max subscriber that attempted to access HBO Max was redirected to Max to sign into the new Max platform. (Decl. ¶ 14.) The HBO Max platform was no longer accessible. (*Id.*) Every subscriber who then elected to use Max was

presented with the Max Terms, and could not proceed to use Max without agreeing to be bound by the Max Terms, including its arbitration clause. (*Id.* ¶¶ 14-15.) Under the Max Terms, customers:

> agree that any arbitrations between you and Max will be subject to this [arbitration clause] and not to any prior arbitration agreement you had with Max, and, notwithstanding any provision in this Agreement to the contrary, you agree that this Section 5.4 amends any prior arbitration agreement you had with Max, including with respect to claims that arose before this or any prior arbitration agreement.

(Ex. 6 § 5.4(g).) Max—a term defined in the Max Terms to include Defendant (*id.* § 1)—did not offer customers the option to use Max but opt out of the Max arbitration agreement.

## I. Plaintiff Agrees to the Max Terms

On May 24, 2023, Plaintiff signed into the Max platform. (Decl. ¶ 19.) After he signed in, Plaintiff was presented with the below standalone page:




(Decl. ¶ 15.) The page provided: "By selecting 'Start Streaming' you agree to the Max Terms of Use and acknowledge you have read the Privacy Policy," with a hyperlink to the Max Terms. Plaintiff clicked "Start Streaming" and accessed the Max platform, thereby agreeing to the Max Terms. (Decl. ¶ 15.) Plaintiff admits that he agreed to the Max Terms. (ECF No. 12 at 2, 5-6 (Motion To Remand).)

As of May 26, 2024, Plaintiff is an active Max subscriber. (Decl. ¶ 17.)

### J. Plaintiff's Counsel Seeks To Initiate Mass Arbitration Before the AAA, But the AAA Declines To Administer the Arbitrations

On July 18, 2023, even though Plaintiff's counsel were well aware that the arbitration forum had been changed in the Updated Terms to NAM, Plaintiff's counsel attempted to file 1,030 substantively identical arbitration demands against Defendant with the AAA. (Decl. ¶ 24.) Plaintiff was not among the claimants. On August 11, 2023, the AAA informed Plaintiff's counsel that Defendant did not have an arbitration agreement registered with the AAA and declined to administer the arbitrations. (Ex. 8 at 1 (AAA Letter dated Aug. 11, 2023).)

Defendant informed Plaintiff's counsel that NAM is the arbitration administrator for all disputes relating to HBO Max. (*See, e.g.*, Ex. 9 at 1.) Defendant also advised that it was prepared to arbitrate the claims before NAM. (*Id.* at 2.) Plaintiff's counsel refused.

### K. Plaintiff's Counsel Seeks Relief in the U.S. District Court for the Central District of California (the *Brooks* Action)

On September 12, 2023, Plaintiff's counsel filed a petition in the U.S. District Court for the Central District of California on behalf of five claimants for whom Plaintiff's counsel had submitted arbitration demands before the AAA. (Ex. 10 (the "*Brooks* Petition").) The *Brooks* Petition requested an order directing Defendant to "register[] its agreement with AAA and pay[] necessary fees" so that the petitioners could pursue arbitration before the AAA. (*Id.* ¶ 34.)

The *Brooks* Petition was not brought to obtain relief on behalf of just five petitioners. Plaintiff's counsel's aim is to force Defendant to register with the AAA its superseded arbitration clause, so they can file thousands of additional claims with the AAA even though the AAA is no longer designated as the arbitration administrator for Defendant and its customers.

### L. The *Brooks* Action Is Transferred to New York

On December 1, 2023, on Defendant's motion, the Central District of California issued a tentative ruling in favor of transferring the *Brooks* Action to the U.S. District Court for the Southern District of New York. *See Brooks v. WarnerMedia Direct LLC*, No. CV 23-7579-GW-MRWx, 2023 WL 10706636 (C.D. Cal. Dec. 1, 2023), *adopted*, No. CV 23-7579-GW-MRWx, 2023 WL 10705852 (C.D. Cal. Dec. 4, 2023). On December 3, 2023, the parties entered into a joint stipulation consenting to the ruling. (Ex. 11.)

### M. Defendant Moves To Compel Arbitration Before NAM in the *Brooks* Action

The parties have fully briefed cross-motions to compel arbitration in *Brooks* that are pending before Judge Failla in the U.S. District Court for the Southern District of New York, docketed as No. 1:23-cv-11030-KPF. The petitioners moved to compel arbitration before the AAA under superseded HBO Max terms, and Defendant moved to compel arbitration before NAM under the Updated Terms. Those motions are *sub judice* before Judge Failla. As Defendant's motion to transfer explains, the *Brooks* motion to compel mirrors this motion and should be heard by the same court.

### N. Plaintiff's Counsel File Four Actions in Alabama State Court

On February 23, 2024, Plaintiff's counsel filed claim forms and one-sentence "complaints" against Defendant asserting VPPA claims in the District Court of Colbert County, Alabama on behalf of four individuals who purported to be HBO Max users (the "Alabama Actions"). (Exs. 12, 13, 14, 15.) Two of these individuals had already submitted "Pre-Arbitration Notice[s] of Dispute" to Defendant invoking arbitration "pursuant to HBO's Terms of Use." (Exs. 16, 17.) All four plaintiffs were on a list of claimants Plaintiff's counsel provided to Defendant on whose behalf Plaintiff's counsel threatened VPPA claims in arbitration. And all

four plaintiffs submitted Purported Opt-Outs to Defendant acknowledging that the arbitration agreement in the HBO Terms of Use applied to their claims.

On that same date, before Plaintiff's counsel served Defendant with any papers, Plaintiff's counsel made an application to serve Defendant with interrogatories. (Ex. 18.) The Alabama court granted that request. None of the plaintiffs in the Alabama Actions informed the Alabama court that their claims are subject to a binding arbitration agreement with a New York forum-selection clause. Instead, Plaintiff's counsel sought improperly to obtain discovery outside of arbitration.

On March 18, 2024, Defendant removed the Alabama Actions. On April 15, 2024, Plaintiff's counsel filed notices of voluntary dismissal on behalf of each Plaintiff.[10]

### O. Plaintiff's Counsel File This Action and Two Related Actions in Tennessee State Court While the Alabama Actions Remained Pending

On or around April 5, 2024, Plaintiff's counsel filed identical complaints against Defendant asserting VPPA claims on behalf of Plaintiff and two other individuals in the General Sessions Court, Coffee County, Tennessee. (Exs. 19, 20, 21.)

Plaintiff previously submitted a notice of dispute to Defendant "pursuant to [the Superseded Terms]" and invoking arbitration. (Ex. 3.) Plaintiff was also on a list of claimants Plaintiff's counsel provided to Defendant on whose behalf Plaintiff's counsel threatened VPPA claims in arbitration.

---

[10] *See* Notice of Voluntary Dismissal, *Coleman v. WarnerMedia Direct, LLC*, No. 3:24-CV-00333 (N.D. Ala. Apr. 15, 2024), ECF No. 8; Notice of Voluntary Dismissal, *West v. WarnerMedia Direct, LLC*, No. 3:24-CV-00344 (N.D. Ala. Apr. 15, 2024), ECF No. 6; Notice of Voluntary Dismissal, *Parker v. WarnerMedia Direct, LLC*, No. 3:24-CV-00346 (N.D. Ala. Apr. 15, 2024), ECF No. 9; Notice of Voluntary Dismissal, *Febles v. WarnerMedia Direct, LLC*, No. 3:24-CV-00342 (N.D. Ala. Apr. 15, 2024), ECF No. 5.

As noted above, the Terms allow small claims proceedings only so long as the claim is heard in that small claims court and "is not removed or appealed to a court of general jurisdiction." (Exs. 4 § 5.4(a), 5 § 5.4(a), 6 § 5.4(a).) After Plaintiff filed his action, because of all the prior jurisdictional gamesmanship, Defendant requested confirmation from each Plaintiff that—in accordance with the Terms—they will not attempt to seek additional relief outside the jurisdiction of, or transfer or appeal the action from, the General Sessions Court, Coffee County, Tennessee, or refile the action in another court.[11] Such a stipulation would have avoided the need for removal to this Court. Plaintiff and the other two plaintiffs refused to so stipulate.

**P. Defendant Removes this Action and Plaintiff Moves To Remand**

On March 24, 2024, Defendant removed this action and two related actions to this Court on the ground that the plaintiffs' claims arise under federal law (*i.e.*, the VPPA). (ECF No. 1.)

On June 4, 2024, Plaintiff moved to remand this action. (ECF No. 12.) In his motion to remand, Plaintiff expressly admitted that he was bound by (i) the December 20, 2022, update to the HBO Max Terms, which designate NAM as the arbitral forum for customer disputes; and (ii) the Max Terms, which likewise designate NAM as the arbitral forum for customer disputes. (ECF No. 12 at 2, 5-6.)

## ARGUMENT

## I. PLAINTIFF IS BOUND BY THE UPDATED TERMS THAT REQUIRE HIS CLAIMS TO BE ARBITRATED BEFORE NAM

The Court should compel Plaintiff to arbitrate his claim before NAM because he is bound by the Updated Terms, including the arbitration clause designating NAM as the arbitral forum for his dispute. Plaintiff admits that he agreed to the Updated Terms. Even absent that

---

[11] An appeal of a decision of the General Sessions Court, Coffee County, Tennessee, would be heard de novo by a court of general jurisdiction. *See* Tenn. Code Ann. § 27-5-108.

concession, Plaintiff is bound by the Updated Terms because he was provided conspicuous notice of the terms and assented to them.

### A. Plaintiff Admits He Is Bound By the Max Terms

Plaintiff has admitted in his motion to remand that he agreed to the Updated Terms, including its arbitration clause. (ECF No. 12 at 2, 5-6.) That admission is dispositive of this motion and mandates that he be compelled to arbitrate before NAM. *See, e.g.*, *Lonstein L. Off., P.C. v. Evanston Ins. Co.*, No. 20-cv-9712 (LJL), 2022 WL 72302, at *8 (S.D.N.Y. Jan. 6, 2022) (compelling arbitration where "Plaintiffs do not dispute that there is a valid arbitration agreement between [themselves and defendant]"); *GateGuard, Inc. v. MVI Sys. LLC*, No. 19 Civ. 2472 (JPC), 2021 WL 4443256 (S.D.N.Y. Sept. 28, 2021) (compelling arbitration where "[plaintiff] has conceded that the parties agreed to an arbitration agreement by alleging that [defendant] accepted the Terms of Service"); *Getz v. Verizon Commc'ns, Inc.*, No. 18cv4652(DLC), 2018 WL 5276426, at *3 (S.D.N.Y. Oct. 24, 2018) (compelling arbitration where "[Plaintiff] concedes that he consented to arbitration when he signed the Customer Agreement"). That motion states:

> [Plaintiff] . . . agreed to terms written and imposed by WarnerMedia that required all disputes, except those concerning bodily injury or intellectual property, to be heard in arbitration or small claims court. Specifically, he and WarnerMedia "agree[d] to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction." Ex. A (HBO Max Terms of Use (Updated Apr. 29, 2020), at 33); Ex. B (HBO Max Terms of Use (Updated Oct. 19, 2021), at 40); Ex. C (HBO Max Terms of Use (Updated Nov. 1, 2022), at 31); Ex. D (HBO Max Terms of Use (Updated Dec. 20, 2022), at 31); **Ex. E (Max Terms of Use (Updated May 23, 2023), at 25); Ex. F (Max Terms of Use (Updated Feb. 27, 2024), at 34)**.

(ECF No. 12 at 2; *see also id.* at 5-6 (stating that "the parties' agreement" included the Max Terms).)

### B. Plaintiff Is Bound by the Max Terms Under Contract Principles

Even absent that admission, Plaintiff is bound by the Max Terms because he received conspicuous notice of the terms and assented to them. A party is bound by an arbitration agreement where "the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).[12] Both criteria are satisfied here.

#### 1. Defendant Provided Conspicuous Notice of the Max Terms

Defendant provided conspicuous notice of the Max Terms containing the arbitration agreement. As the Second Circuit has held, an individual has "constructive notice" of an arbitration clause sufficient to satisfy the conspicuous notice requirement "[a]s long as the hyperlinked text [to the terms containing the clause] was itself reasonably conspicuous." *Meyer*, 868 F.3d at 79. Notice of terms is "reasonably conspicuous" where "immediately above" the

[12] The question of whether Plaintiff formed an agreement to arbitrate under the Max Terms is governed by "ordinary state-law principles that govern the formation of contracts." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005) (citation omitted). Under Tennessee law, New York law governs this inquiry in light of the choice of law provision in the Max Terms providing that "[t]his Agreement shall be governed by the laws of the State of New York." (Ex. § 5.10.) *See Masco Cabinetry Middlefield, LLC v. Cefla N. Am., Inc.*, 637 F. App'x 192, 197 (6th Cir. 2015) (applying Michigan law, as specified in a choice of law provision, in determining whether a contract was formed between various parties); *see also Sharp v. Terminix Int'l, Inc.*, No. 2:18-cv-02072-SHM-dkv, 2018 WL 3520140, at *3 (W.D. Tenn. July 20, 2018) ("[T]he Court relies on the choice of law provision in the parties' disputed contract . . . to determine whether Defendants have established a valid contract."). In any event, because New York and Tennessee "apply substantially similar rules for determining whether the parties have mutually assented to a contract, [w]hich state's law applies is therefore without significance." *Xue Qin Liu v. TD Ameritrade, Inc.*, No. 18-CV-6764 (NGG) (CLP), 2020 WL 2113219, at *4 (E.D.N.Y. May 4, 2020) (alteration in original) (citation omitted); *see also Tractebel Energy Mktg., Inc, v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." (citation omitted)); *Advanced Disposal Servs. Tenn. Holdings v. Lusk Disposal Servs., Inc.*, 478 F. Supp. 3d 716, 721-22 (E.D. Tenn. 2020) (noting that Tennessee law requires sufficiently definite mutual manifestation of assent to form a contract, decided with reference to outward manifestations of assent by parties).

submit button the form states "[b]y clicking [submit]: I accept and agree to [the hyperlinked] Terms of Use Agreement." *Levy v. Credit Plus, Inc.*, No. 21-CV-5541 (KMK), 2023 WL 2644352, at *7 (S.D.N.Y. Mar. 27, 2023) (citation omitted).

That is the situation here: after signing in to the Max platform, Plaintiff was presented with a stand-alone screen informing him that "[b]y selecting 'Start Streaming,' you agree to the Max Terms of Use." (Decl. ¶ 19.) The form provided a hyperlink to a full presentation of the Terms such that Plaintiff had the opportunity to view them by simply clicking the link. (*Id.*)

### 2. Plaintiff Manifested Assented to the Max Terms

Plaintiff also assented to the arbitration agreement. An individual unambiguously manifests assent to terms containing an arbitration agreement by submitting a form containing a hyperlink to the terms where a "reasonable user would know that by clicking ["Start"], he was agreeing to the terms and conditions accessible via the hyperlink." *Meyer*, 868 F.3d at 79-80; *see also Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 454 (E.D.N.Y. 2019) (holding that plaintiff manifested assent to an arbitration provision where "[t]he text indicating that submitting an order would result in acceptance of the terms and conditions was clearly visible"). The assent requirement is met "whether [the user] clicked on the hyperlink or not." *Meyer*, 868 F.3d at 79-80; *accord Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 832 (S.D.N.Y. 2020).

Here, Plaintiff assented to the arbitration agreement when he clicked the "Start Streaming" button directly below the hyperlinked Terms on the Max sign-in page. (Decl. ¶ 19.) As noted above, by clicking "Start Streaming" Plaintiff was required to acknowledge that she agreed to the Max Terms, which included the arbitration agreement. (*Id.*) As the Second Circuit has explained in addressing a case presenting very similar facts:

> [I]t would be unreasonable for an internet user to read the conspicuous and clear statement, "I agree to the [terms]," with the button marked "Confirm and continue" directly below it, and not understand that the "Confirm and continue" button is the

> mechanism by which the user "[c]onfirm[s]" his or her "agree[ment] to the payment terms" and "continue[s]" the transaction . . .

*Edmundson v. Klarna, Inc.*, 85 F.4th 695, 706-09 (2d Cir. 2023) (citation omitted).

Courts routinely hold that similar sign-ups through online and mobile application forms establish unambiguous manifestation of assent. *See, e.g.*, *Edmundson*, 85 F.4th at 706-09 (plaintiff "unambiguously manifested her assent" by clicking a "Confirm and continue" button where the "hyperlink to [defendant's] terms appear[ed] directly adjacent to the 'button'" (citations omitted)); *Garcia v. Nabfly, Inc.*, No. 23 Civ. 1162 (PGG), 2024 WL 1795395, at *8 (S.D.N.Y. Apr. 24, 2024) ("Plaintiff unambiguously manifested assent to [defendant's] terms . . . when she checked the box for 'I agree – Lets do this,'" where the hyperlink to the relevant terms was "located immediately above [that box] . . . " (citation omitted)); *Hastings v. Nifty Gateway, LLC*, No. 22 Civ. 10517 (AT), 2024 WL 1175196, at *5 (S.D.N.Y. Mar. 19, 2024) (plaintiff "unambiguously assented" to defendant's terms by clicking a "sign up" button where the terms were hyperlinked "directly above [that button]" and a "reasonable user would know that by clicking the [sign-up] button, he was agreeing to the terms and conditions accessible via the hyperlink." (second alteration in original) (citation omitted)).

### C. Plaintiff's VPPA Claims Must Be Arbitrated Before NAM Pursuant To the Updated Terms

Because Plaintiff is bound by the Updated Terms, the VPPA claim he asserts here must be arbitrated before NAM. As Plaintiff admits, "[t]here is no dispute that [Plaintiff's] video privacy dispute is within the scope of the parties' arbitration agreement." (ECF No. 12 at 5-6 (Motion To Remand).) The arbitration agreement in the Updated Terms designates NAM as the arbitral forum for disputes. (Exs. 5 § 5.4(c); 6 § 5.4(c).)

### D. There Was No Right to Reject to Max Terms, Including the Arbitration Agreement Contained Therein

Plaintiff may contend that he opted out of the Max Terms through his Purported Opt-Out (discussed above at Background § F), but that is incorrect. When Defendant replaced HBO Max with Max on May 23, 2023, HBO Max ceased to exist in the United States. (Decl. ¶ 4, 14.) Max was an entirely new platform with enhanced features and additional content that was not available in HBO Max.[13] (*Id.* ¶ 4.) The Max Terms therefore superseded any prior HBO Max Terms of Use, including the arbitration agreements contained in the Superseded Terms, with respect to all users of Max. As the Max Terms make clear, there is no right to reject the Max arbitration agreement. (*Supra* Background § H.) Every subscriber who elected to use the new Max streaming platform affirmatively agreed to be bound by the Max Terms and the arbitration agreement contained therein, including Plaintiff. Plaintiff concedes this fact in his motion to remand. (ECF No. 12 at 2, 5-6.)

In any event, there are serious questions about whether Plaintiff's Purported Opt-Out was duly authorized or is authentic.

***First***, it is well settled that "[p]ersons dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's authority." *Reaper v. ACE Am. Ins. Co.*, No. 21-cv-05876-HSG, 2022 WL 3348575, at *4 (N.D. Cal. Aug. 12, 2022) (alteration in original) (citation omitted). There is good reason to question whether Plaintiff's counsel had such authority here. Plaintiff's counsel have submitted identical Purported Opt-Outs on behalf of all individuals they

---

[13] Plaintiff attempts in his motion to remand to conflate HBO Max and Max, asserting—without support—that Defendant "owns a streaming service known as either HBO Max or simply Max." (ECF No. 12 at 1.) That is mistaken. The two platforms are distinct and HBO Max no longer exists. (*See* Decl. ¶ 4.)

claim to represent in their mass arbitration, including thousands of individuals who never had HBO Max accounts and could not have opted out of anything. (*See supra* Background § F.)

The Updated HBO Max Terms also include provisions that Plaintiff's counsel themselves would like to avoid because they require adherence to Rule 11 standards and, for the first time, authorize arbitrators to award sanctions against counsel. Plaintiff's counsel was presumably interested in avoiding such sanctions, particularly in view of their failure to vet claimants, and was therefore required to obtain informed consent from any clients with respect to opting out of the Updated HBO Max Terms. If the Court were to give any credence to the Purported Opt-Outs, discovery would be needed to determine whether informed consent was obtained.

***Second***, under bedrock rules of evidence, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Plaintiff's Purported Opt-Out appears to bear some kind of digital signature, but there is no electronic verification of that "signature" or any other confirmation that it reflects Plaintiff's consent.

### E. Plaintiff Has Waived the Right To Compel Arbitration Under the Superseded Terms

Plaintiff also cannot invoke the arbitration clause in the Superseded Terms for another reason: he has waived any right to arbitration under those terms. A party waives a right to arbitrate under an agreement where he acts "inconsistently with that right." *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023) (citation omitted); *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it.").

Courts have held that, by filing an action in court, a party to an arbitration agreement acts inconsistently with the right to arbitrate and thus waives that right. *See, e.g.*, *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 862 (2d Cir. 1985) ("[A] party may waive its right to arbitration by inconsistent resort to litigation."); *S. Sys., Inc. v. Torrid Oven Ltd.*, 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000) ("[S]ubmission of arbitrable issues in a judicial proceeding constitutes a waiver of the right to compel arbitration regardless of the prejudice to the other party." (citation omitted)); *AFS Logistics, LLC v. Cochran*, No. 3:16-cv-3139, 2017 WL 4947512, at *6 (M.D. Tenn. Oct. 31, 2017) (plaintiff waived its right to arbitrate when it brought both a state and federal lawsuit asserting statutory claims "without raising arbitration," which "evinces an intent to litigate rather than arbitrate"). Here, Plaintiff has filed this action in court and hence waived the right to arbitration.

Waiver is even more clearly established where a party first pursues claims in arbitration and then later files an action in court. *See United Paper Mach. Corp. v. DiCarlo*, 19 A.D.2d 143, 145 (4th Dep't 1963) (by filing in court after pursuing arbitration the plaintiff "waived and abandoned its right to arbitration and it must lie in the bed it made"), *aff'd*, 14 N.Y.2d 814 (1964). In that instance, there can be no doubt that the plaintiff knew of the arbitration right and "knowingly relinquish[ed]" the right. *Brown*, 2023 WL 8800728, at *3 (alteration in original) (citation omitted).

That is precisely what happened here. In January 2023, Plaintiff invoked arbitration by representing that he was bound by an HBO Max arbitration clause in his notice of dispute and Purported Opt-Out. (Exs. 3, 7.) In April 2023, Plaintiff's counsel reaffirmed that Plaintiff was among the claimants on whose behalf Plaintiff's counsel threatened to assert arbitrations as part of their mass arbitration effort. (*Supra* Background § A.) Yet, less than a year later, Plaintiff filed

this lawsuit in court. Plaintiff has knowingly relinquished the right to compel arbitration under the Superseded Terms by invoking those terms and later—with knowledge of those terms—filing an action in court.

**F. The Small Claims Carveout in the Arbitration Clause Does Not Apply**

Plaintiff argues that this action is carved out from the arbitration mandate in the arbitration clause because he filed in a small claims court. Plaintiff is wrong. As Plaintiff concedes, under the Updated Terms a user may bring a claim in small claims court, but only if the claim "is not removed." (ECF No. 12 at 2; *see also* Ex. 6 § 5.4(a) (Max Terms).) Because Defendant has properly removed this action, the small claims exception in the arbitration clause no longer applies. Moreover, under the forum-selection clause, this action must proceed in New York. Accordingly, the action cannot be remanded to the General Sessions Court, Coffee County, Tennessee.

## II. PLAINTIFF SHOULD BE ENJOINED FROM COMMENCING ARBITRATION UNTIL HE COMPLIES WITH THE PRE-FILING REQUIREMENTS UNDER THE UPDATED TERMS

Although Plaintiff should be compelled to arbitrate his claim, the Court should enjoin him from commencing arbitration until he satisfies the conditions precedent required under the Updated Terms.[14] The Updated Terms provide that a claimant who intends to initiate arbitration must first send Defendant a written Notice of Dispute. (Ex. 5 § 5.4(b); Ex. 6 § 5.4(b).) A user may not initiate arbitration until 60 days after submitting a compliant Notice of Dispute. (*Id.*) Moreover, the Court may "enjoin the filing or prosecution of an arbitration" if these pre-arbitration requirements are not met. (*Id.*)

[14] The Max Terms and December 2022 HBO Max Terms of Use contain identical requirements.

The Updated Terms provide that a Notice of Dispute must set forth, among other things, (i) "how and when [the user] became a subscriber, [the user's] subscription history, and current subscription status" and (ii) "a description of the nature and basis of the claim or dispute, including any relevant facts," including " facts pertaining to your use of [the service] and the platform(s) on which you watch it (e.g., via connected TV, iPhone, desktop)." (Ex. 5 § 5.4(b); Ex. 6 § 5.4(b).) The Notice of Dispute must also include "a personally signed statement from the claimant (and not their counsel) verifying the accuracy of the contents of the Notice." (*Id.*)

Plaintiff's notice of dispute fails to meet these requirements for several reasons. To start, the notice does not state how and when Plaintiff became a subscriber, his subscription history, or his current subscription status. (Ex. 3 (Notice of Dispute).) It also does not include relevant facts regarding the nature and basis of the claim. For example, the notice vaguely refers to claims "under . . . state law" without any reference to specific state laws under which he purports to assert claims. (*Id.*) Further, the notice contains no details regarding Plaintiff's use of the service or the platforms on which he watched content. (*Id.*) And the notice does not include a certification from Plaintiff verifying the accuracy of the contents of the notice. (*Id.*) Because plaintiff has not met the pre-arbitration notice and informal dispute resolution requirements in the Updated Terms, the Court should enjoin him from commencing arbitration until he satisfies these procedural prerequisites.

## III. THIS ACTION MUST BE STAYED PENDING ARBITRATION

The court must stay the action for the pendency of the arbitral proceedings. Under the FAA, in any lawsuit "referable to arbitration," as here, the court "**shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). As the Supreme Court held just last month, this "plain statutory text requires a court to stay the proceeding" upon request of a party.

*Smith v. Spizzirri*, 144 S. Ct. 1173, 1177 (2024). This legislative mandate "overrides any discretion a district court might otherwise have had to dismiss a suit." *Id.* at 1178. Because Plaintiff's claims must be arbitrated and Defendant has requested a stay, this action must be stayed pending the outcome of any arbitration.

## CONCLUSION

For the foregoing reasons, if this Court does not transfer this action to the U.S. District Court for the Southern District of New York—as requested by Defendant's pending Motion To Transfer— (i) Plaintiff should be compelled to arbitrate his purported claims before NAM, (ii) any arbitration should be enjoined until he meets the pre-filing procedural requirements set forth in the Max Terms, and (iii) this action should be stayed.

Dated: June 18, 2024

Respectfully submitted,

*/s/ Britt K. Latham*
Britt K. Latham (023149)
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201-3001

Michael W. McTigue Jr. (admitted *pro hac vice*)
Meredith C. Slawe (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Counsel for Defendant WarnerMedia Direct, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on the following counsel via the Court's CM/ECF notification system on this 18th day of June, 2024:

Garth R Seagroves
Ray Jackson & Lane
111 North Atlantic Street
P.O. Box 1027
Tullahoma, TN 37388

Garth R Segroves
Law Office of Garth Segroves
113 West Moore Street
Tullahoma, TN 37388

*/s/ Britt K. Latham*
Britt K. Latham