IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | | |
|---|---|---|
| JONATHAN LALEWICZ, | : | |
| Plaintiff, | : | Civil Action No. 4:24-cv-00044-TRM |
| vs. | : | |
| WARNERMEDIA DIRECT, LLC, | : | |
| Defendant. | | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Britt K. Latham
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201-3001

Michael W. McTigue Jr.
Meredith C. Slawe
(both admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602

*Counsel for Defendant*
*WarnerMedia Direct, LLC*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. DEFENDANT HAS NOT WAIVED ITS RIGHT TO REMOVE ........ 3

II. PLAINTIFF HAS REPEATEDLY REFUSED TO ARBITRATE BEFORE NAM ........ 4

III. PLAINTIFF IS BOUND BY THE MAX TERMS REQUIRING ARBITRATION BEFORE NAM ........ 6

A. The Max Terms Superseded All Previous Version Of The HBO Max Terms ........ 7

B. Courts Routinely Apply Updated Arbitration Provisions To Pending Litigation ........ 9

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ACE American Insurance Co. v. Guerriero*,
738 F. App'x 72 (3d Cir. 2018) ....................6

*Aluminum Brick & Glass Workers International Union v. AAA Plumbing Pottery Corp.*,
991 F.2d 1545 (11th Cir. 1993) ....................5

*Beneficial National Bank, U.S.A. v. Payton*,
214 F. Supp. 2d 679 (S.D. Miss. 2001)....................9

*Brooks v. Warnermedia Direct, LLC*,
No. 23 CIV. 11030 (KPF), 2024 WL 3330305 (S.D.N.Y. July 8, 2024) ................ 2, 6-7, 9

*Camaj v. Holder*,
625 F.3d 988 (6th Cir. 2010) ....................2

*Grimaldi v Sangi*,
177 A.D.3d 1208 (3d Dep't 2019) ....................7

*Henry v. Roane County, Tennessee*,
No. 3:16-CV-689, 2018 WL 2422744 (E.D. Tenn. May 29, 2018)....................8

*International Union v. Cummins, Inc.*,
434 F.3d 478 (6th Cir. 2006) ....................5

*INTL FCStone Financial, Inc. v Jacobson*,
19 C 1438, 2019 WL 2356989 (N.D. Ill. June 4, 2019) ....................4

*Northville Industries Corp. v. Fort Neck Oil Terminals Corp.*,
100 A.D.2d 865 (2d Dep't 1984)....................8

*Regis Associates v. Rank Hotels (Management) Ltd.*,
894 F.2d 193 (6th Cir. 1990) ....................3

*Russell v. Citigroup, Inc.*,
748 F.3d 677 (6th Cir. 2014) ....................9, 10

*Sevier County Schools Federal Credit Union v. Branch Banking & Trust Co.*,
990 F.3d 470 (6th Cir. 2021) ....................10

*Shougang Mining Investment Co. v. Mongolia*,
11 F. 4th 144 (2d Cir. 2021) ....................5

*State Systems, LLC v. Harris*,
No. 2:22-cv-2528-SHL-atc, 2022 WL 18142400 (W.D. Tenn. Oct. 20, 2022)....................3

*Taylor v. Unumprovident Corp.*,
No. 1:03CV1009, 2005 WL 3448052 (E.D. Tenn. Dec. 14, 2005) ....................................3

*Transatlantic Lines LLC v. Amergent Techs, LLC*,
186 F. Supp. 3d 223 (D. Conn. 2016) .....................................................................5

*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018) ....................................................................8

*Wu v. Uber Technologies, Inc.*,
186 N.Y.S.3d 500 (Sup. Ct. 2022) .........................................................................9

**STATUTES**

9 U.S.C. § 4 .....................................................................................................4

## PRELIMINARY STATEMENT

As set forth in Defendant's Reply In Further Support of Defendant's Motion to Transfer Venue, this Court should grant Defendant's Motion to Transfer and do so before deciding Plaintiff's Motion to Remand and Defendant's Motion to Compel. In any event, however, Plaintiff should arbitrate his claim before National Arbitration and Mediation ("NAM") because Plaintiff concedes that he (i) was provided conspicuous notice of the Updated HBO Max Terms and the Max Terms and (ii) manifested assent to the Updated Terms.[1]

The Opposition does not show otherwise:

***First***, the small claims court clause of the arbitration provision does not waive Defendant's right to remove a case from small claims court. The Terms expressly reserve each party's right to have disputes heard in federal court. Plaintiff does not address this fundamental flaw, and has not cited to any authority, in the Sixth Circuit or elsewhere, for the contention that a party waives the right to removal in an agreement that expressly reserves the right to have disputes heard in federal court.

***Second***, Plaintiff has repeatedly refused to agree to submit his claim against Defendant to arbitration before NAM. Well before Plaintiff filed his action in Tennessee small claims court, Plaintiff's counsel refused on Plaintiff's behalf (and on behalf of numerous other clients) to arbitrate claims before NAM. Under the Section 4 of the Federal Arbitration Act ("FAA"), such conduct constitutes a refusal to arbitrate.

***Third***, Plaintiff's Purported Opt Out from the Updated Terms was ineffective, and accordingly the Updated Terms apply to his claim. Plaintiff claims "the only reason" Defendant

---

[1] Capitalized terms have the meanings ascribed to them in Defendant's Motion to Compel Arbitration, dated June 18, 2024, ECF No. 16 ("Motion" or "Mot.").

argued that Plaintiff's Purported Opt Out was ineffective is because Defendant "received so many of them" from Plaintiff's counsel. (ECF No. 23, "Opposition" or "Opp." at 10.) Not so. Defendant argued that there are substantial reasons to doubt that the Purported Opt Out was duly authorized or authentic, including that (i) Plaintiff's counsel, who provided the Opt Out, have an independent basis for seeking to prevent the application of the Updated Terms and have not provided evidence showing that they obtained informed consent from Plaintiff explaining this conflict and (ii) nothing in the Purported Opt Out shows that Plaintiff consented to that Opt Out. The Opposition fails to directly address either of these arguments, and Plaintiff's counsel's "unsupported assertions" to the contrary "are not evidence." *See Camaj v. Holder*, 625 F.3d 988, 991 n.3 (6th Cir. 2010). Just yesterday, Judge Failla of the Southern District of New York ruled in *Brooks* that the petitioners there "could not reject the December 2022 Terms via letter and then continue to use the HBO Max platform without those terms applying to them." *Brooks v. Warnermedia Direct, LLC*, No. 23 CIV. 11030 (KPF), 2024 WL 3330305, at *15 (S.D.N.Y. July 8, 2024) (*Brooks II*).

Further, Plaintiff's Purported Opt Out could not reject the arbitration agreement in the Max Terms because Plaintiff had no right to reject the Max Terms. As explained in the Motion (at p. 20), Max was an entirely new platform with enhanced features and additional content that were not available in HBO Max. The Max Terms contained a provision superseding all previous versions of the HBO Max Terms of Use, including the Superseded Terms, with respect to all users of Max. Thus, the Max Terms entirely replaced the Superseded Terms, and Plaintiff has conceded that he agreed to the Max Terms. Plaintiff's Opposition does not address that and so he has waived any argument to the contrary.

***Fourth***, Plaintiff erroneously asserts that the "Sixth Circuit has disfavored attempts to change arbitration agreements after a party learned of a dispute." (Opp. at 10.) But courts routinely apply updated agreements to parties even after a litigation commenced. For the foregoing reasons, Defendant requests that the Court (i) compel Plaintiff to arbitrate his claims before NAM as he is required to do under the Updated Terms, (ii) mandate that Plaintiff comply with the pre-arbitration notice and informal dispute resolution requirements in the Updated Terms prior to initiating arbitration,[2] and (iii) stay this action during the pendency of the arbitral proceedings.

## ARGUMENT

### I. DEFENDANT HAS NOT WAIVED ITS RIGHT TO REMOVE

The Sixth Circuit has made clear that the statutory "right to removal is absolute," and thus, any waiver of this statutory right "must be clear and unequivocal." *Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990). Courts have recognized that the Sixth Circuit has set a "high bar" for contractual waivers of removal rights. *State Sys., LLC v. Harris*, No. 2:22-cv-2528 , 2022 WL 18142400, at *3 (W.D. Tenn. Oct. 20, 2022) (collecting cases).

As noted in Defendant's Opposition to the Motion to Remand, (ECF No. 19 at 16, n.13), the forum-selection clause at issue here expressly permits disputes to proceed in state or federal court in New York. The presence of a forum-selection clause that expressly permits actions to be brought in federal court does not meet the "high bar" for contractual waivers of the removal rights set by the Sixth Circuit. *Harris*, 2022 WL 18142400, at *3. Plaintiff did not address that

---

[2] Plaintiff does not address Defendant's argument that Plaintiff has not complied with the pre-arbitration notice and informal dispute resolution requirements in the Updated Terms. Plaintiff's failure to respond to this argument should be "deemed a waiver of any opposition to the relief sought." *Taylor v. Unumprovident Corp.*, No. 1:03CV1009, 2005 WL 3448052, at *2 (E.D. Tenn. Dec. 14, 2005).

contractual right, nor did Plaintiff cite any case in which a contractual waiver of the right to removal was found where the contract expressly permitted cases to be brought in federal courts. To the contrary, in all of the cases Plaintiff cited, the parties had agreed that state court was the exclusive venue for disputes. Not so here.

## II. PLAINTIFF HAS REPEATEDLY REFUSED TO ARBITRATE BEFORE NAM

Under § 4 of the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Plaintiff has at all times refused to arbitrate before NAM, before Plaintiff filed his action in the General Sessions Court of Coffee County, Tennessee, and now, by requesting that this court compel arbitration before the AAA.

A refusal to arbitrate before a specified arbitration administrator in an arbitration agreement is a refusal to arbitration under the FAA. For example, in *INTL FCStone Financial, Inc. v Jacobson*, 19 C 1438, 2019 WL 2356989 (N.D. Ill. June 4, 2019), plaintiff sued several defendants to enjoin them from further pursuing their pending arbitration at the Financial Industry Regulatory Authority (FINRA) and moved to compel arbitration pursuant to an arbitration agreement designating three arbitration administrators, but not FINRA. *Id*. at *2. After defendants initiated arbitration in FINRA, plaintiff emailed defendants' counsel offering arbitration at any of the three arbitration administrators designated in the agreement. *Id*. Defendants' counsel responded arguing that the arbitration agreement was "unenforceable" and "insisted on arbitration before FINRA." *Id*. In granting plaintiff's motion to compel before one of the three designated arbitration administrators, the court rejected defendants' argument that it had not refused to arbitrate, holding "the agreement specified particular arbitral forums, [plaintiff] properly chose one of them, and defendants refuse to arbitrate there." *Id*. at *6.

Here, Plaintiff's counsel, acting on his behalf and behalf of the thousands of other individuals they purport to represent, have refused to agree to arbitrate Plaintiff's claim before NAM, both before and after Plaintiff filed the action in small claims court. (*See* Mot. at 12.) Plaintiff argues that "none of his counsel's actions in representing other clients should be imputed to Mr. Lalewicz," (Opp. at 5), but in the very same brief, Plaintiff asks this Court to "compel WarnerMedia to arbitrate in the AAA," (*id.* at 11). Plaintiff's decision to file an action in small claims court pursuant to the small claims court provision in the Terms does not alter the fact that Plaintiff has refused to arbitrate before NAM. Indeed, Defendant has properly removed Plaintiff's small claims court case pursuant to the Terms and now moves to compel arbitration, and Plaintiff continues to insist upon arbitration before the AAA and unequivocally refuses to arbitrate before NAM.

None of the cases cited by Plaintiff support his contention that such conduct constitutes a refusal to arbitrate. In *Transatlantic Lines LLC v. Amergent Techs, LLC*, 186 F. Supp. 3d 223 (D. Conn. 2016), the parties did not, as Plaintiff wrongly states, have a dispute "over the correct arbitral forum." (Opp. at 6.) Instead, the arbitration agreement there provided that "[a]ll disputes under this Agreement shall be resolved through arbitration" but did not "specify the forum for arbitration." *Transatlantic*, 186 F. Supp. 3d at 224-25 (alteration in original). The court denied petitioner's motion to compel arbitration in Connecticut and reasoned that respondent did not refuse to arbitrate by filing an arbitration in California because the arbitration clause permitted arbitration anywhere.[3] In short, Plaintiff has persistently refused to arbitrate before NAM,

[3] Plaintiff's other cases **support** Defendant's position that Plaintiff refused to arbitrate before NAM. In *Shougang Mining Investment Co. v. Mongolia*, 11 F. 4th 144 (2d Cir. 2021), the parties participating in an international arbitration for **seven years** before the tribunal held that they lacked jurisdiction, and thus, the court held that the respondent had not refused to arbitrate.

including in the very Opposition in which Plaintiff's argues that he hasn't refused to arbitrate.

## III. PLAINTIFF IS BOUND BY THE MAX TERMS REQUIRING ARBITRATION BEFORE NAM

Plaintiff does not, and cannot, dispute that (i) Defendant provided conspicuous notice of the Max Terms and (ii) Plaintiff unambiguously manifested assent to the Max Terms. (*See* Mot. at 17–19; Ex. 1 ¶¶ 18-19 ("Decl.").)[4] Instead, Plaintiff contends that that the "new terms" cannot be enforced against him due to his Purported Opt Out. (*See* Opp. at 9–11.) As the Motion explains, there are reasons to doubt that the Purported Opt Out was duly authorized or authentic. (Mot. at 20–21.)

Judge Failla ruled in *Brooks* that the purported opt outs sent on behalf of the five petitioners there **did not** have the effect of rejecting the changes in the Updated Terms if those petitioners accessed the HBO Max platform after the Updated Terms came into effect:

> To the extent discovery reveals that Petitioners did assent to the NAM Agreement, e.g., by accessing the HBO Max platform after the December 2022 Terms came into effect as an authorized user on another individual's account, the rejection letters are also irrelevant. The NAM Agreement was an open offer that Petitioners were free to accept at any time; Petitioners could not reject the December 2022 Terms via letter and then continue to use the HBO Max platform without those terms applying to them. Accordingly, the rejection letters do not alter the Court's analysis herein.

---

In *International Union v. Cummins, Inc.*, 434 F.3d 478 (6th Cir. 2006), the Sixth Circuit affirmed a district court's order compelling arbitration and clarified that the required that a refusal to arbitration must "unequivocal" was limited to the National Labor Relations Act (NLRA) context. Similarly, *Aluminum Brick & Glass Workers International Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545 (11th Cir. 1993), clarified that "time period to bring an action begins [**under the NRLA**] to run when one party unequivocally refuses to arbitrate the dispute." *Id*. at 1548. Finally, in *ACE American Insurance Co. v. Guerriero*, 738 F. App'x 72 (3d Cir. 2018), the Third Circuit affirmed the district court's holding that the defendant refused to arbitrate "when [defendant] presented [plaintiff] with a draft complaint," before filing the draft complaint, and compelled the defendant to arbitration. *Id*. at 76.

[4] "Ex." citations herein refer to the Declaration of Michael W. McTigue Jr., filed herewith.

*Brooks II*, 2024 WL 3330305, at *15. Here, unlike in *Brooks*, Plaintiff does not dispute Plaintiff accessed both the HBO Max platform and Max platform after the Updated Terms came into effect. (Decl. ¶¶ 18-19.) Accordingly, under the reasoning set forth above, Plaintiff is bound by the Updated Terms. Further, regardless of whether the Purported Opt Out was duly authorized or authentic, that document could not reject the arbitration agreement in the Max Terms, because Plaintiff had no right to reject the Max Terms: the Max Terms was a novation that extinguished all previous versions of the HBO Max Terms, including the Superseded Terms.

### A. The Max Terms Superseded All Previous Version Of The HBO Max Terms

Under New York law, a novation occurs when a new agreement extinguishes any rights or obligations arising from an existing agreement. *See Grimaldi v Sangi*, 177 A.D.3d 1208, 1210 (3d Dep't 2019). A novation has four elements: "(1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract." *Id*. (citation omitted). All four are present here: ***First***, Plaintiff concedes that the Superseded Terms govern his claim and does not contest the validity of the Superseded Terms. ***Second***, Plaintiff does not and cannot dispute that he agreed to the Max Terms. On May 24, 2023, after Plaintiff signed into the Max platform, Plaintiff was presented with a stand-alone screen informing him that "[b]y selecting 'Start Streaming,' you agree to the Max Terms of Use." (Decl. ¶ 19.) Judge Failla in *Brooks II* confirmed Plaintiff assented to the arbitration agreement when he clicked the "Start Streaming" button directly below the hyperlinked Terms on the Max sign-in page. (*Id*.); *Brooks II*, 2024 WL 3330305, at *14 ("the Court finds that clicking the 'Start Streaming' button does constitute unambiguous assent to the May 2023 Terms and the NAM Agreement therewith").

***Third***, the Max Terms extinguished all previous version of the arbitration agreement in the HBO Terms of Use. Section 5.4(g) of the Max Terms provides:

> **You agree that any arbitrations between you and Max will be subject to this Section 5.4 and not to any prior arbitration agreement you had with Max**, and, notwithstanding any provision in this Agreement to the contrary, you agree that this Section 5.4 amends any prior arbitration agreement you had with Max, **including with respect to claims that arose before this or any prior arbitration agreement**.

(Ex. 2 § 5.4(g) (emphasis added).) This language clearly expresses the intent that the arbitration agreement in the Max Terms substitute the arbitration agreement in "any prior arbitration agreement you had with Max," including the Superseded Terms. (*Id.*) *See Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 866–67 (2d Dep't 1984) (a new agreement extinguished a previous agreement between the parties, where the new agreement provided that the agreement "shall be in lieu of and shall supersede any other agreements existing as of the date hereof between"), *aff'd*, 477 N.E.2d 1102 (N.Y. 1985).

***Fourth***, Plaintiff does not explicitly challenge the validity of the Max Terms, nor could he. Defendant provided an entirely new platform with enhanced features and additional content that were not available in HBO Max in exchange for Plaintiff's agreement to the Max Terms. (Mot. at 19; Decl. ¶ 4.) For example, Max provided "35,000 hours of content, more than twice that of HBO Max for the same price."[5] Accordingly, all of Plaintiff's rights and obligations under the previous HBO Max Terms of Use were extinguished when Plaintiff agreed to the Max Terms, including any right in the Superseded Terms to the reject changes in new terms. Plaintiff does not address that inescapable legal conclusion, and it is well-established that "[a]n argument not addressed in a responding party's brief is deemed waived." *Henry v. Roane Cnty., Tenn.*, No. 3:16-CV-689, 2018 WL 2422744, at *11 (E.D. Tenn. May 29, 2018).

---

[5] https://press.wbd.com/us/media-release/max/warner-bros-discoverys-enhanced-streaming-platform-max-launches-today.

**B. Courts Routinely Apply Updated Arbitration Provisions To Pending Litigation**

The Max Terms explicitly apply to "to claims that arose before this or any prior arbitration agreement." (Ex. 2 § 5.4(g).) Such retroactive application language is routinely upheld by courts. *See, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 878 (N.D. Cal. 2018) (revised arbitration clause applied "[o]n its face" to claims arising before the updated terms where clause covered "'claims that arose before [the parties] first accepted any versions of these terms containing an arbitration provision"), *aff'd*, 816 F. App'x 68 (9th Cir. 2020); *Beneficial Nat'l Bank, U.S.A. v. Payton*, 214 F. Supp. 2d 679, 688 (S.D. Miss. 2001) ("As numerous courts have recognized, 'if [an] arbitration clause contains retroactive time-specific language, e.g., a phrase reading "this agreement applies to all transactions occurring before or after this agreement," then [the court] may apply the arbitration provision to events relating to past events'" (alterations in original) (citation omitted) (collecting cases).

The fact that Plaintiff's counsel threatened to file mass arbitration demands against Defendant before the Max Terms took effect is of no moment. Judge Failla specifically held that "[t]he Court does not agree that the NAM Agreement's retrospective application renders it unconscionable." *Brooks II*, 2024 WL 3330305, at *17. Indeed, courts enforce updated arbitration provisions to compel arbitration of claims asserted in litigation that is pending at the time of the update. For example, in *Wu v. Uber Technologies, Inc.*, 186 N.Y.S.3d 500 (Sup. Ct. 2022), a New York court held that a car service's updated arbitration provision compelled arbitration of a personal injury suit filed two months before the update, because the plaintiff was on notice of and agreed to the update, and continued to use the service after the updated terms took effect. *Id*. at 506–09.

The cases that Plaintiff cites to suggest that "the Sixth Circuit has disfavored attempts to change arbitration agreements after a party learned of a dispute" are inapposite. (Opp. at 10.) In

*Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014), the plaintiff had initiated a class action against defendant in in January 2012, and in January 2013, while the lawsuit was still in progress, signed an employment agreement requiring him to arbitrate class claims. Unlike the Max Terms, the updated employment agreement in *Russell* only applied to disputes "that begin—that arise—in the present or future." *Id.* at 679. The Sixth Circuit concluded that "the parties signed this agreement to head off future lawsuits, not to cut off existing ones." *Id*. at 680. In *Sevier County Schools Federal Credit Union v. Branch Banking & Trust Co.*, 990 F.3d 470, 478 (6th Cir. 2021), the Sixth Circuit held the district court erred in making two factual findings that are inapposite here: (1) defendant's changes in the updated agreement had "exceed[ed] the scope of the original change-of-terms provision [in the original two-page agreement]" and (2) there was no evidence that plaintiffs affirmatively agreed to new terms. Not so here.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Defendant's Motion, if this Court does not transfer this action to the U.S. District Court for the Southern District of New York—as requested by Defendant's pending Motion To Transfer—(i) Plaintiff should be compelled to arbitrate his purported claims before NAM, (ii) any arbitration should be enjoined until he meets the pre-filing procedural requirements set forth in the Max Terms, and (iii) this action should be stayed for the duration of that arbitration.[6]

---

[6] Plaintiff states that if "this Court nevertheless compels arbitration, it should compel WarnerMedia to arbitrate in the AAA." (Opp. at 11.) As the Motion explains, Plaintiff has waived any right to arbitration under the Superseded Terms, given that Plaintiff first noticed his intention to pursue claims in arbitration and then later filed an action in small claims court. (Mot. at 21–23.) Once again, Plaintiff does not address this argument anywhere in the Opposition.

Dated: July 9, 2024

Respectfully submitted,

/s/ *Britt K. Latham*
Britt K. Latham (023149)
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201-3001
Tel: (615) 742-7762
Fax: (615) 742-6293
blatham@bassberry.com

Michael W. McTigue Jr. (admitted *pro hac vice*)
Meredith C. Slawe (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant*
*WarnerMedia Direct, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on the following counsel via the Court's CM/ECF notification system on this 9th day of July, 2024:

Garth R Seagroves
Ray Jackson & Lane
111 North Atlantic Street
Post Office Box 1027
Tullahoma, Tennessee 37388

Garth R Segroves
Law Office of Garth Segroves
113 West Moore Street
Tullahoma, Tennessee 37388

*/s/ Britt K. Latham*
Britt K. Latham