UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JONATHAN LALEWICZ, :

Plaintiff, : Civil Action No. 1:24-CV-06173-JMF

v.
:
WARNERMEDIA DIRECT, LLC,
:
Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT WARNERMEDIA DIRECT, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Counsel for Defendant*
*WarnerMedia Direct, LLC*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iv

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 3

A. Consumers Must Agree to the Terms of Use to Access HBO Max or Max .......... 3

B. Plaintiff Creates an HBO Max Account Under the Superseded Terms .......... 4

C. Defendant Updates the Terms and Provides Notice to Plaintiff .......... 4

D. The Updated Terms Designate NAM as the Arbitral Forum .......... 5

E. Plaintiff's Counsel Commences A "Mass Arbitration" Against Defendant .......... 6

F. Plaintiff's Counsel Sends Thousands of Identical Purported "Opt Outs" to Defendant .......... 7

G. Plaintiff's Counsel Submits Thousands of Nearly Identical "Pre-Arbitration Notices of Dispute" to Defendant .......... 7

H. Defendant Replaces HBO Max with Max and Implements the Max Terms .......... 8

I. Plaintiff Agrees to the Max Terms .......... 9

J. Plaintiff's Counsel Files 1,030 Demands for Arbitration With the AAA and Brings the *Brooks* Action in California .......... 9

K. Judge Failla Holds That HBO Max And Max Subscribers Who Used The Service After The December 2022 Terms Came Into Effect Must Arbitrate Before NAM .......... 10

L. Plaintiff's Counsel File This Action and Two Related Actions in Tennessee Small Claims Court .......... 11

M. Defendant Removes this Action and It Is Transferred to this Court .......... 11

ARGUMENT .......... 12

I. PLAINTIFF IS BOUND BY THE UPDATED TERMS THAT REQUIRE HIS CLAIMS TO BE ARBITRATED BEFORE NAM .......... 12

A. Plaintiff Has At All Times Refused to Arbitrate Under the Updated Terms .......... 12

B. The Updated Terms Are Valid and Enforceable....13

C. Plaintiff Is Bound by the Max Terms Under Well-Settled Contract Principles....14

1. New York Law Governs This Dispute....14

2. Defendant Provided Conspicuous Notice of the Max Terms....14

3. Plaintiff Manifested His Assent to the Max Terms....15

D. Plaintiff's VPPA Claims Must Be Arbitrated Before NAM Pursuant To the Updated Terms....17

E. Plaintiff's Purported Opt-Out Is Both Irrelevant and Ineffective....17

F. Plaintiff Has Waived the Right To Compel Arbitration Under the Superseded Terms....19

G. The Small Claims Carveout in the Arbitration Clause Does Not Apply....20

II. PLAINTIFF SHOULD BE ENJOINED FROM COMMENCING ARBITRATION UNTIL HE COMPLIES WITH THE PRE-FILING REQUIREMENTS UNDER THE UPDATED TERMS....21

III. THIS ACTION MUST BE STAYED PENDING ARBITRATION....22

CONCLUSION....23

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................15

*Beautyman v. Lilyandmajor, LLC*,
No. 20-81290-CV, 2021 WL 1264228 (S.D. Fla. Feb. 1, 2021) ....................21

*Brooks v. WarnerMedia Direct, LLC*,
No. 23 CIV. 11030 (KPF), 2024 WL 3330305 (S.D.N.Y. July 8, 2024) .................. *passim*

*Brown v. Peregrine Enterprises, Inc.*,
No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) ....................19, 20

*Davis v. Ally Fin. Inc.*,
No. CV 23-22897 (RMB-MJS), 2024 WL 2239144 (D.N.J. May 17, 2024) ....................21

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................16

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020) ....................16

*Garcia v. Nabfly, Inc.*,
No. 23 Civ. 1162 (PGG), 2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024) ....................16

*Glazer v. Lehman Brothers, Inc.*,
394 F.3d 444 (6th Cir. 2005) ....................14

*Hastings v. Nifty Gateway, LLC*,
No. 22 Civ. 10517 (AT), 2024 WL 1175196 (S.D.N.Y. Mar. 19, 2024) ....................16

*Lalewicz v. WarnerMedia Direct, LLC*,
No. 4:24-CV-44, 2024 WL 3640409, at *4-5 (E.D. Tenn. July 24, 2024) ....................11, 14

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................14, 15, 16

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ....................19

*Nicholas v. Wayfair Inc.*,
410 F. Supp. 3d 448 (E.D.N.Y. 2019) ....................15

*Pincaro v. Glassdoor, Inc.*,
No. 16 Civ. 6870 (ER), 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) ....14

*Reaper v. ACE American Insurance Co.*,
No. 21-cv-05876-HSG, 2022 WL 3348575 (N.D. Cal. Aug. 12, 2022)....18

*Sadlock v. Walt Disney Co.*,
No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023) ....14

*Saizhang Guan v. Uber Techs., Inc.*,
236 F. Supp. 3d 711 (E.D.N.Y. 2017) ....14

*Seguros Banvenez, S.A. v. S/S Oliver Drescher*,
761 F.2d 855 (2d Cir. 1985)....19

*Shaw Group Inc. v. Triplefine International Corp.*,
322 F.3d 115 (2d Cir. 2003)....20

*Smith v. Spizzirri*,
144 S. Ct. 1173 (2024)....23

*United Paper Machinery Corp. v. DiCarlo*,
19 A.D.2d 143 (4th Dep't 1963), *aff'd*, 14 N.Y.2d 814 (1964) ....19

*Washington National Life Insurance Company of New York v. Morgan Stanley*,
974 F. Supp. 214 (S.D.N.Y. 1997) ....14

*Wu v. Uber Techs., Inc.*,
186 N.Y.S.3d 500, 531 (Sup. Ct. Bronx Cnty. 2022), *aff'd*, 197 N.Y.S.3d 1 (2023)....14

## STATUTES

9 U.S.C. § 3....22

9 U.S.C. § 4....12

18 U.S.C. § 2710....1

## RULES

Fed. R. Evid. 901(a)....19

## OTHER AUTHORITIES

Andrew J. Pincus et al., U.S. Chamber of Com. Inst. For Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* (Feb. 2023), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf....6

## PRELIMINARY STATEMENT

Plaintiff Jonathan Lalewicz should be compelled to arbitrate his claims before National Arbitration and Mediation ("NAM") because he was provided conspicuous notice of Defendant WarnerMedia Direct, LLC's ("WarnerMedia") updated Terms of Use requiring arbitration before NAM and manifested unambiguous assent to those Terms.[1]

This action is part of a multi-pronged, multi-state strategy by Plaintiff's counsel Keller Postman LLC ("Keller") and Davis & Norris, LLP to improperly leverage the threat of massive arbitration fees to coerce a settlement of meritless claims.[2] Plaintiff is just one of thousands of individuals on whose behalf Plaintiff's counsel have threatened substantively identical arbitrations against WarnerMedia based on their alleged use of HBO Max.[3] As part of this strategy, however, this Plaintiff filed an action in Tennessee state small claims court rather than

---

1 Defendant does not waive and expressly reserves all defenses and arguments, including defenses under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

2 Although Davis & Norris, LLP is counsel of record for Plaintiff in this action, Keller is involved here and is orchestrating the mass arbitration on behalf of many claimants including Plaintiff.

3 The threatened arbitration claims are almost certainly frivolous on their merits. Plaintiff's counsel allege that each claimant they represent was an HBO Max subscriber whose viewing information Defendant disclosed to Facebook in violation of the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 ("VPPA"). That theory is premised on an elaborate set of preconditions involving a given user's means of access to the HBO Max service and use of the Facebook social media platform. Yet counsel do not appear to have performed even a minimal level of diligence to assess whether members of the claimant pool have satisfied those preconditions such that they might be able to state a claim. Defendant's preliminary analysis reveals that an overwhelming majority of the putative claimants either do not appear to be HBO Max subscribers **at all**, or they never accessed hbomax.com on a web browser—which are just two of the essential predicates of Plaintiff's counsel's theory of liability—and thus could not possibly have a claim. For the remaining claimants—including Plaintiff—Plaintiff's counsel have not confirmed that any of the other essential preconditions have been met. Remarkably, several claimants who purportedly authorized Plaintiff's counsel to file arbitration claims with the AAA are deceased.

in arbitration. Defendant removed Plaintiff's action to the Eastern District of Tennessee, which then granted Defendant's motion to transfer the case to this Court.

Because Plaintiff is bound by an arbitration clause designating NAM as the arbitral forum for consumer disputes, he must be compelled to arbitrate his claims before NAM. Plaintiff's contentions to the contrary are not correct:

**1.** Plaintiff asserts that he can file this action in court because the arbitration clause permits a claimant to pursue a dispute in small claims court. Plaintiff is incorrect: that exception applies only "so long as the action is not removed." Because Defendant removed this action, Plaintiff can no longer proceed in small claims court in Tennessee.

**2.** Plaintiff will contend that the arbitration clause in Defendant's current Terms of Use does not apply because his claim is governed by an arbitration clause in a superseded version of the HBO Max Terms of Use (the "Superseded Terms"), which designate the American Arbitration Association ("AAA") as the arbitration provider. That contention is wrong. Indeed, around the time that Plaintiff filed his claim in small claims court, Judge Failla held in a very similar case against WarnerMedia that subscribers in Plaintiff's position are bound to arbitrate before NAM. *Brooks v. WarnerMedia Direct, LLC*, No. 23 CIV. 11030 (KPF), 2024 WL 3330305, at *14 (S.D.N.Y. July 8, 2024). This Plaintiff is bound to do so for two independent reasons:

**a.** On December 20, 2022, Defendant updated the Superseded Terms, including by revising the arbitration agreement to designate NAM as the arbitration administrator. Plaintiff was an active subscriber of HBO Max at that time, received direct email notice of the updated HBO Max Terms of Use ("Updated HBO Max Terms"), and continued to subscribe to and stream video content on HBO Max after receiving this notice. He is bound by

the Updated HBO Max Terms.

**b.** On May 23, 2023, Defendant replaced HBO Max with its enhanced service Max, and required HBO Max subscribers who chose to sign in and access Max to accept the Max Terms of Use ("Max Terms"). On the very next day, Plaintiff logged in to Max, was presented with a standalone screen that stated: "By selecting 'Start Streaming,' you agree to the Max Terms of Use," clicked "Start Streaming," and proceed to stream video content on Max. Judge Failla has held "that clicking the 'Start Streaming' button does constitute unambiguous assent to the May 2023 Terms and the NAM Agreement therewith." *Brooks*, 2024 WL 3330305, at *14.

Both the Updated HBO Max Terms and the Max Terms (collectively, the "Updated Terms") require that disputes brought against Defendant be arbitrated before NAM. As such, Defendant requests that the Court (i) compel Plaintiff to arbitrate his claims before NAM as he is required to do under the Updated Terms, (ii) mandate that Plaintiff comply with the pre-arbitration notice and informal dispute resolution requirements in the Updated Terms prior to initiating arbitration, and (iii) stay this action during the pendency of the arbitral proceedings.

## FACTUAL BACKGROUND

### A. Consumers Must Agree to the Terms of Use to Access HBO Max or Max

Defendant operated HBO Max, a subscription-based video-on-demand streaming platform, which Defendant subsequently replaced with its enhanced streaming platform, Max. (Ex. 1,[4] Declaration of Naomi Waibel in Support of WarnerMedia's Motion to Compel ("Decl.") ¶¶ 3–4.) HBO Max customers were required to create an account to activate an HBO Max subscription. (*Id.* ¶ 5.) This process included a presentation of the HBO Max Terms of Use,

[4] "Ex." citations herein refer to the Declaration of Michael W. McTigue Jr., filed herewith.

which subscribers were required to accept to access the platform. (*Id.*) Max customers are likewise required to create an account to activate their Max subscription and must accept the Max Terms to access the platform.[5] (*Id.* ¶ 7.)

**B. Plaintiff Creates an HBO Max Account Under the Superseded Terms**

On December 14, 2020, Plaintiff created an HBO Max account using the email address **jlalewicz5578@gmail.com** and accepted the Superseded Terms, including its arbitration provisions. (Decl. ¶ 17.) Plaintiff admits that he agreed to the Superseded Terms. (ECF No. 15 at 2, 5–6 (Motion To Remand).) Plaintiff's subscription remained active as of May 26, 2024. (Decl. ¶ 17.)

All versions of the HBO Terms of Use, including the Superseded Terms, contain a substantially identical "Governing Law and Venue" provision providing that the "Terms shall be governed by the laws of the State of New York, without regard to conflict of law principles." (Ex. 2 § 5.9 (the Superseded Terms).) The Superseded Terms also provided Defendant "reserve[s] the right to modify these Terms or change any part of the Platform at any time." (*Id.* § 5.12.) The Superseded Terms further provided that by "continuing to use the Platform after any revised Terms come into effect and, in the case of any Subscription, your decision not to cancel your Subscription before it renews or within any relevant notice period, means you agree to be bound to the changes." (*Id.*)

**C. Defendant Updates the Terms and Provides Notice to Plaintiff**

On December 20, 2022, Defendant updated the HBO Max Terms of Use. (Ex. 3; Decl. ¶ 10.) Defendant provided notice of this update through (i) direct emails to all subscribers and

---

5 All versions of the Terms require compliance with pre-arbitration dispute resolution provisions. (Ex. 2 § 5.4(b) (Superseded Terms); Ex. 3 § 5.4(b) (Updated HBO Max Terms); Ex. 4 § 5.4(b) (Max Terms).)

former subscribers, including Plaintiff and (ii) pop-up notifications within the HBO Max streaming platform. (Decl. ¶¶ 10–13.) Defendant's email notification provided:

> HBO Max has updated our **Terms of Use** ("Terms"). The updates contain important information about your legal rights, including updates to the arbitration clause and other rules and procedures that govern the resolution of disputes between you and HBO Max. The updates won't affect the way you use HBO Max.
>
> These updated terms will apply as of today for new subscribers. For prior and existing subscribers, like you, the terms apply beginning on the date your subscription renews or 30 days from today, whichever comes first. You can review the new updated Terms **here**.
>
> Your continued subscription to and/or access of HBO Max will confirm that you have reviewed and agreed to the updated Terms of Use.

(Decl. ¶¶ 11–12.) The email also provided two hyperlinks to a full presentation of the Updated HBO Max Terms, indicated in purple above. (*Id.*)

The in-app pop-up that contained a link to the Updated HBO Max Terms stated:

> We've updated our Terms of Use. These updates contain important information about your legal rights, including an updated arbitration clause. By continuing to subscribe to and/or access HBO Max, you agree to be bound by the updated Terms. Read the updated Terms at www.hbomax.com/terms-of-use/en-us.

(*Id.* ¶ 13.) The Updated HBO Max Terms provided that the updated arbitration agreement would apply to "claims that arose before this or any prior Agreement." (Ex. 3 § 5.4(a).)

By continuing to subscribe to the HBO Max platform after being provided notice via the email and in-app pop-up notification, Plaintiff affirmatively agreed to the Updated Terms.

### D. The Updated Terms Designate NAM as the Arbitral Forum

The Updated HBO Max Terms amended the arbitration clause in the Superseded Terms, including by designating NAM as the arbitration forum for disputes. (Ex. 3 § 5.4(c).) The change to the provision changed the arbitration administrator but not the scope of its coverage. The updated HBO Max Terms, like the Superseded Terms, provided that "[t]o the fullest extent permitted by applicable law, HBO Max and you agree to arbitrate **all disputes and claims**," with

narrow exceptions for certain bodily injury and intellectual property disputes not applicable to Plaintiff's claim. (Ex. 3 § 5.4(a) (emphasis in original).)

The arbitration clause in the Updated Terms, and in the Superseded Terms, contains a carveout for small claims proceedings unless removed to federal court (among other conditions):

> Notwithstanding the [mandatory arbitration provisions], either party may elect to have claims heard in small claims court seeking only individualized relief, **so long as the action is not removed or appealed to a court of general jurisdiction.**

(Ex. 3 § 5.4(a); Ex. 4 § 5.4(a) (emphases added); Ex. 2 § 5.4(a) (substantially the same, except adding "remains in that court" before "is not removed").)

### E. Plaintiff's Counsel Commences A "Mass Arbitration" Against Defendant

Plaintiff's counsel are lawyers from Keller and Davis & Norris, LLP.[6] Keller has been recognized as the firm that has "led" a "mass-arbitration avalanche."[7] The U.S. Chamber of Commerce has described the mass arbitration tactic thus: "By simultaneously filing thousands of arbitration demands with identical claims, plaintiffs' lawyers seek to trigger an immediate obligation to pay millions of dollars in fees." *Mass Arbitration Shakedown* at 18. "Their goal appears not to be to obtain simultaneous decisions on the merits in these thousands of cases—the firms filing mass arbitrations appear to lack the resources to manage these large numbers of claims." *Id*. "Rather, the goal appears to be to use the threat of a huge fee payment to force companies to settle the claims *en masse*, regardless of the underlying merits." *Id.*

---

[6] Plaintiff's counsel and Troxel Law LLP ("Troxel") have sent Defendant a list of putative claimants who Plaintiff's counsel and Troxel purported to represent and on whose behalf Plaintiffs' counsel threatened to pursue identical claims in arbitration. (Decl. ¶ 21.) That list included Plaintiff. (*Id*. ¶ 22.) Plaintiff is also represented by the Law Office of Garth Segroves, counsel of record for Plaintiff in this action.

[7] Andrew J. Pincus et al., U.S. Chamber of Com. Inst. for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* 19 (Feb. 2023) ("*Mass Arbitration Shakedown*"), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf.

Keller routinely partners with Troxel to pursue mass arbitrations. *See Mass Arbitration Shakedown* at 21 & 67 n.94. Troxel published social media solicitations seeking claimants in connection with Plaintiff's counsel's mass arbitration efforts here and is identified as co-counsel on pre-arbitration notices of dispute submitted on behalf of Plaintiff and other claimants. (*See* Decl. ¶¶ 20–21.) Plaintiff is just one of thousands of individuals whom Plaintiff's counsel purport to represent in a "mass arbitration" against Defendant.[8]

### F. Plaintiff's Counsel Sends Thousands of Identical Purported "Opt Outs" to Defendant

Between December 23, 2022, and January 24, 2023, Plaintiff's counsel sent Defendant thousands of substantively identical documents, each titled "Rejection of Recent Changes to HBO Arbitration Agreements" (the "Purported Opt-Outs"). Plaintiffs' counsel sent these Purported Opt-Outs on behalf of Plaintiff and every other individual they claim to represent, including thousands of individuals who never subscribed to HBO Max. (Decl. ¶ 23; Ex. 6.)

### G. Plaintiff's Counsel Submits Thousands of Nearly Identical "Pre-Arbitration Notices of Dispute" to Defendant

Under the Updated Terms, a user who intends to initiate arbitration must first send Defendant a written Notice of Dispute meeting certain requirements. (Ex. 3 § 5.4(b); Ex. 4

---

[8] Keller has been sued for its efforts to weaponize the arbitration process for improper purposes at the expense of businesses, consumers, courts, and arbitration bodies. On May 31, 2024, Keller was accused of orchestrating a "scheme to manufacture and file meritless arbitration claims [against a business] *en masse*." (Ex. 5 ¶ 1 (Complaint, *Tubi, Inc. v. Keller Postman LLC*, No. 24-cv-01616 (D.D.C. filed May 31, 2024).) That suit alleges that Keller's objective was "to extort a quick settlement in which Keller Postman would benefit above all others" regardless of the merits of the claims asserted. (*Id.* ¶ 67.) The suit further alleges that Keller's "conduct is riddled with ethical violations from beginning to end" and, among other things, caused customers to breach their contractual obligations with the defendant under the arbitration agreement they were seeking to enforce to undertake an informal resolution process before pursuing claims. (*Id.* ¶ 3.) Keller's conduct was allegedly "[i]n direct opposition to the interests of [its] clients." (*Id.* ¶ 67.)

§ 5.4(b).) A user may not initiate arbitration until 60 days after submitting a compliant Notice of Dispute. (*Id*.)

Between January 5, 2023, and April 14, 2023, Plaintiff's counsel sent letters to Defendant that collectively contained thousands of substantively identical "Pre-Arbitration Notice[s] of Dispute." (Decl. ¶ 21.) The notices of dispute alleged that Defendant violated the VPPA, and claimed the notices of dispute were being sent pursuant to the arbitration clause in the Superseded Terms. (*See* Ex. 7 (Notice of Dispute).) Based on Defendant's review of the notices of dispute and Defendant's business records, thousands of individuals on whose behalf Plaintiff's counsel sent notices of dispute never even had an HBO Max account. (Decl. ¶ 21.)

Plaintiff's notice of dispute did not include the content mandated by the Updated Terms, such as his subscription status and history, the nature of his claim, or a certification verifying the accuracy of its contents. (Ex. 7.)

### H. Defendant Replaces HBO Max with Max and Implements the Max Terms

On May 23, 2023, Defendant replaced HBO Max with Max. (Decl. ¶¶ 4, 14.) On that same date, Defendant implemented the Max Terms that superseded any prior HBO Max Terms of Use with respect to all users of Max. (Ex. 4.) The Max Terms contain an arbitration clause that is substantially identical to the arbitration clause in the Updated HBO Max Terms. (*Id.* § 5.4.)

Beginning on May 23, 2023, every HBO Max subscriber that attempted to access HBO Max was redirected to Max to sign into the new Max platform. (Decl. ¶ 14.) The HBO Max platform was no longer accessible. (*Id*.) Every subscriber who then elected to use Max was presented with the Max Terms, and could not proceed to use Max without agreeing to be bound by the Max Terms, including its arbitration clause. (*Id.* ¶¶ 14–15.) Under the Max Terms, customers:

> agree that any arbitrations between you and Max will be subject to this [arbitration Agreement] and not to any prior arbitration agreement you had with Max, and, notwithstanding any provision in this Agreement to the contrary, you agree that this Section 5.4 amends any prior arbitration agreement you had with Max, including with respect to claims that arose before this or any prior arbitration agreement.

(Ex. 4 § 5.4(g).) Max—a term defined in the Max Terms to include Defendant (*id.* § 1)—did not offer customers the option to use Max without agreeing to the Max Terms.

**I. Plaintiff Agrees to the Max Terms**

On May 24, 2023, one day after Defendant launched Max, Plaintiff signed into the Max platform. (Decl. ¶ 19.) After he signed in, Plaintiff was presented with the below standalone page:




(Decl. ¶ 15.) The page provided: "By selecting 'Start Streaming' you agree to the Max Terms of Use and acknowledge you have read the Privacy Policy," with a hyperlink to the Max Terms. Plaintiff clicked "Start Streaming" and accessed the Max platform, thereby agreeing to the Max Terms. (Decl. ¶ 19.)

**J. Plaintiff's Counsel Files 1,030 Demands for Arbitration With the AAA and Brings the *Brooks* Action in California**

On July 18, 2023, even though Plaintiff's counsel were well aware that the arbitration

forum had been changed in the Updated Terms to NAM, Plaintiff's counsel attempted to file 1,030 substantively identical arbitration demands against Defendant with the AAA. (Decl. ¶ 24.) Plaintiff was not among the claimants. On August 11, 2023, the AAA declined Plaintiff's counsel's attempt to arbitrate because Defendant did not have an arbitration agreement registered with the AAA. (Ex. 8 at 1 (AAA Letter dated Aug. 11, 2023).)

On September 12, 2023, Plaintiff's counsel filed a petition in the U.S. District Court for the Central District of California on behalf of five claimants for whom Plaintiff's counsel had submitted arbitration demands before the AAA. Plaintiff's counsel's aim was to force Defendant to register their arbitration agreement with the AAA and bring thousands of additional claims. The petition was transferred to the Southern District of New York pursuant to the Terms of Use.

### K. Judge Failla Holds That HBO Max And Max Subscribers Who Used The Service After The December 2022 Terms Came Into Effect Must Arbitrate Before NAM

On July 8, 2024, Judge Failla held that the Purported Opt Outs sent on behalf of the five *Brooks* petitioners did not have the effect of rejecting the changes in the Updated Terms if those petitioners accessed the HBO Max platform after the Updated Terms came into effect:

> To the extent discovery reveals that Petitioners did assent to the NAM Agreement, e.g., by accessing the HBO Max platform after the December 2022 Terms came into effect as an authorized user on another individual's account, the rejection letters are also irrelevant. The NAM Agreement was an open offer that Petitioners were free to accept at any time; Petitioners could not reject the December 2022 Terms via letter and then continue to use the HBO Max platform without those terms applying to them.

*Brooks*, 2024 WL 3330305, at *15. Likewise, Judge Failla held "that clicking the 'Start Streaming' button does constitute unambiguous assent to the [Max] May 2023 Terms and the NAM Agreement therewith." *Id*. at *14. Judge Failla ordered limited discovery into whether the *Brooks* petitioners had agreed to arbitrate before NAM.

Here, Plaintiff Lalewicz accessed the HBO Max platform and streamed videos after the December 20, 2022 HBO Max Terms came into effect. (Decl. ¶ 18.) Plaintiff also signed into the Max platform on June 17, 2023, was presented with a stand-alone screen containing a hyperlink to the Max Terms of Use, and clicked "Start Streaming" to access the Max platform. (*Id.* ¶ 19.) As Judge Failla held, Plaintiff could not purport to reject the December 2022 Terms but continue to use the HBO Max platform without those terms applying to him.

### L. Plaintiff's Counsel File This Action and Two Related Actions in Tennessee Small Claims Court

On or around April 5, 2024, Plaintiff's counsel filed identical complaints against Defendant asserting VPPA claims on behalf of Plaintiff and two other individuals in the General Sessions Court, Coffee County, Tennessee. (*See* ECF No. 1-1.) Plaintiff previously submitted a notice of dispute to Defendant "pursuant to [the Superseded Terms]" and invoking arbitration. (Ex. 7.) Plaintiff was also on a list of claimants Plaintiff's counsel provided to Defendant on whose behalf Plaintiff's counsel threatened VPPA claims in arbitration.

### M. Defendant Removes this Action and It Is Transferred to this Court

On May 24, 2024, Defendant removed this action and two related actions to the Eastern District of Tennessee on the ground that the plaintiffs' claims arise under federal law (*i.e.*, the VPPA). (ECF No. 1.) On July 24, 2024, the Eastern District of Tennessee transferred the action to this Court, finding that the valid forum selection clause in the HBO Max Terms of Use required Plaintiff to bring his claim in New York. *Lalewicz v. WarnerMedia Direct, LLC*, No. 4:24-CV-44, 2024 WL 3640409, at *4–5 (E.D. Tenn. July 24, 2024) ("[i]n sum, Lalewicz was required to bring this action in New York and did not do so").

## ARGUMENT

## I. PLAINTIFF IS BOUND BY THE UPDATED TERMS THAT REQUIRE HIS CLAIMS TO BE ARBITRATED BEFORE NAM

The Court should compel Plaintiff to arbitrate his claim before NAM because he is bound by the Updated Terms, including the arbitration clause designating NAM as the arbitral forum for his dispute.

### A. Plaintiff Has At All Times Refused to Arbitrate Under the Updated Terms

The Updated Terms are governed by the Federal Arbitration Act ("FAA"). (Ex. 3 § 5.4(a).) Under Section 4 of the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Plaintiff has at all times refused to arbitrate before NAM, both before Plaintiff filed his action in the General Sessions Court of Coffee County, Tennessee, and again when Plaintiff opposed Defendant's motion to compel arbitration in the Eastern District of Tennessee. (ECF No. 26 at 11 ("If this Court nevertheless compels arbitration, it should compel WarnerMedia to arbitrate in the AAA").)

Refusing to arbitrate before the arbitration administrator specified in an arbitration agreement constitutes a refusal to arbitrate under the FAA. For example, in *INTL FCStone Financial, Inc. v Jacobson*, 19 C 1438, 2019 WL 2356989 (N.D. Ill. June 4, 2019), plaintiff sued several defendants to enjoin them from further pursuing their pending arbitration at the Financial Industry Regulatory Authority (FINRA) and moved to compel arbitration pursuant to an arbitration agreement designating three other arbitration administrators. *Id.* at *2. After defendants initiated arbitration in FINRA, plaintiff emailed defendants' counsel offering arbitration at any of the three arbitration administrators designated in the agreement. *Id.*

Defendants' counsel responded arguing that the arbitration agreement was "unenforceable" and "insisted on arbitration before FINRA." *Id*. In granting plaintiff's motion to compel before one of the three designated arbitration administrators, the court rejected defendants' argument that they had not refused to arbitrate, holding "the agreement specified particular arbitral forums, [plaintiff] properly chose one of them, and defendants refuse to arbitrate there." *Id*. at *6.

Here, Plaintiff's counsel, acting on Plaintiff's behalf and on behalf of the thousands of other individuals they purport to represent, have refused to agree to arbitrate Plaintiff's claim before NAM, both before and after Plaintiff filed the action in small claims court. This is evident through Plaintiff's attempted (and failed) rejection of the arbitration agreement in the Updated HBO Max Terms. (Ex. 6.) Plaintiff's opposition to this motion will not deny the essential facts showing that he was provided notice of the Updated Terms and took the underlying actions Defendant cites to show that he agreed to the Updated Terms. Nevertheless, Plaintiff will fervently oppose this Motion and again request that if Plaintiff's action is not remanded, he be compelled to arbitrate before the AAA and not NAM.

### B. The Updated Terms Are Valid and Enforceable

Judge Failla's opinion in *Brooks* squarely rejected the petitioners' challenge to the enforceability of the arbitration agreement contained in the Updated Terms, holding:

> [T]he NAM Agreement is enforceable, despite its status as a 'contract of adhesion' . . . The Court does not agree that the NAM Agreement's retrospective application renders it unconscionable . . . [T]he Court does not find that the mass arbitration provisions of the NAM Agreement are substantively unconscionable . . . [O]n the factual record currently before it, the Court does not find that the NAM Agreement is substantively unconscionable.

*Brooks*, 2024 WL 3330305 at *16–18. Accordingly, the Updated Terms are valid and enforceable.

**C. Plaintiff Is Bound by the Max Terms Under Well-Settled Contract Principles**

Plaintiff is bound by the Max Terms because he received conspicuous notice of the terms and assented to them. A party is bound by an arbitration agreement where "the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017). Both criteria are satisfied here.

**1. New York Law Governs This Dispute**

The question of whether Plaintiff formed an agreement to arbitrate under the Max Terms is governed by "ordinary state-law principles that govern the formation of contracts." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005) (citation omitted). As the Eastern District of Tennessee held, New York law governs this inquiry in light of the choice of law provision in the HBO Max Terms providing that "[t]hese Terms shall be governed by the laws of the State of New York." (Ex. 3 § 5.10.); *Lalewicz*, 2024 WL 3640409, at ("the Terms of Use's choice-of-law provision applies, and the Court must apply New York law in interpreting the Terms of Use").[9]

**2. Defendant Provided Conspicuous Notice of the Max Terms**

Defendant provided Plaintiff conspicuous notice of the Max Terms containing the arbitration clause. A business may provide notice of such a clause by email, s*ee, e.g.*, *Sadlock v. Walt Disney Co.*, No. 22-cv-09155-EMC, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023); *Pincaro v. Glassdoor, Inc.*, No. 16 Civ. 6870 (ER), 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017), or via an in-app or website popup that the user must click through, *Saizhang Guan v.*

---

[9] This holding is the law of the case. *See Washington Nat. Life Ins. Co. of New York v. Morgan Stanley*, 974 F. Supp. 214, 218 (S.D.N.Y. 1997) ("Under the 'law of the case' doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts.") (citation omitted).

*Uber Techs., Inc.*, 236 F. Supp. 3d 711, 719 (E.D.N.Y. 2017); *Wu v. Uber Techs., Inc.*, 186 N.Y.S.3d 500, 531 (Sup. Ct. Bronx Cnty. 2022), *aff'd*, 197 N.Y.S.3d 1 (2023). An individual has "constructive notice" of an arbitration clause sufficient to satisfy the conspicuous notice requirement "[a]s long as the hyperlinked text [to the terms containing the clause] was itself reasonably conspicuous." *Meyer*, 868 F.3d at 79.

Defendant's notice met these requirements in several independent ways:

- **Electronic Mail.** Starting on December 20, 2022, Defendant emailed all current and former customers of HBO Max, including Plaintiff, to notify them that Defendant "has updated our Terms of Use." (Decl. ¶¶ 11–12.) The email provided a hyperlink to the December 20, 2022 Terms of Use and stated that "[y]our continued subscription to and/or access of HBO Max will confirm that you have reviewed and agreed to the updated Terms of Use." (*Id.*)
- **In-App Pop-Up.** On May 24, 2023, Plaintiff was presented with a stand-alone screen that contained a hyperlink to the Max Terms of Use and required the customer to click "Start Streaming" before accessing the Max platform. (Decl. ¶¶ 15, 19.) The page stated, "By selecting 'Start Streaming' you agree to the Max Terms of Use and acknowledge you have read the Privacy Policy." (*Id.*)

### 3. Plaintiff Manifested His Assent to the Max Terms

Plaintiff also assented to the arbitration agreement. As Judge Failla held in *Brooks*, "clicking the 'Start Streaming' button **does** constitute unambiguous assent to the May 2023 Terms and the NAM Agreement therewith," because a "user's click of a button can be construed as an unambiguous manifestation of assent . . . [where] the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Brooks*, 2024 WL 3330305, at *15 (quoting *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)). An individual unambiguously manifests assent to terms containing an arbitration agreement by submitting a form containing a hyperlink to the terms where a "reasonable user would know that by clicking ["Start"], he was agreeing to the terms and conditions accessible via the hyperlink." *Meyer*, 868 F.3d at 79–80; *see also Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d

448, 454 (E.D.N.Y. 2019) (plaintiff manifested assent to an arbitration provision where "[t]he text indicating that submitting an order would result in acceptance of the terms and conditions was clearly visible"). The assent requirement is met "whether [the user] clicked on the hyperlink or not." *Meyer*, 868 F.3d at 79–80; *accord Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 832 (S.D.N.Y. 2020).

Here, Plaintiff assented to the arbitration agreement when he clicked the "Start Streaming" button directly below the hyperlinked Terms on the Max sign-in page. (Decl. ¶ 19.) As noted above, by clicking "Start Streaming" Plaintiff was required to acknowledge that he agreed to the Max Terms, which included the arbitration agreement. (*Id.*) As the Second Circuit has explained in addressing a case presenting very similar facts:

> [I]t would be unreasonable for an internet user to read the conspicuous and clear statement, "I agree to the [terms]," with the button marked "Confirm and continue" directly below it, and not understand that the "Confirm and continue" button is the mechanism by which the user "[c]onfirm[s]" his or her "agree[ment] to the payment terms" and "continue[s]" the transaction . . .

*Edmundson v. Klarna, Inc.*, 85 F.4th 695, 706–09 (2d Cir. 2023) (citation omitted).

Courts routinely hold that similar sign-ups through online and mobile application forms establish unambiguous manifestation of assent. *See, e.g.*, *id.* (plaintiff "unambiguously manifested her assent" by clicking a "Confirm and continue" button where the "hyperlink to [defendant's] terms appear[ed] directly adjacent to the 'button'" (citations omitted)); *Garcia v. Nabfly, Inc.*, No. 23 Civ. 1162 (PGG), 2024 WL 1795395, at *8 (S.D.N.Y. Apr. 24, 2024) ("Plaintiff unambiguously manifested assent to [defendant's] terms . . . when she checked the box for 'I agree—Lets do this,'" where the hyperlink to the relevant terms was "located immediately above [that box] . . . " (citation omitted)); *Hastings v. Nifty Gateway, LLC*, No. 22 Civ. 10517 (AT), 2024 WL 1175196, at *5 (S.D.N.Y. Mar. 19, 2024) (plaintiff "unambiguously

assented" to defendant's terms by clicking a "sign up" button where the terms were hyperlinked "directly above [that button]" and a "reasonable user would know that by clicking the [sign-up] button, he was agreeing to the terms and conditions accessible via the hyperlink." (second alteration in original) (citation omitted)).

### D. Plaintiff's VPPA Claims Must Be Arbitrated Before NAM Pursuant To the Updated Terms

Because Plaintiff is bound by the Updated Terms, the VPPA claim he asserts here must be arbitrated before NAM. As Plaintiff admits, "[t]here is no dispute that [Plaintiff's] video privacy dispute is within the scope of the parties' arbitration agreement." (ECF No. 15 at 5–6 (Motion To Remand).) The arbitration agreement in the Updated Terms designates NAM as the arbitral forum for disputes. (Ex. 3 § 5.4(c); Ex. 4 § 5.4(c).)

### E. Plaintiff's Purported Opt-Out Is Both Irrelevant and Ineffective

Plaintiff may contend that he opted out of the Updated HBO Max Terms and Max Terms through his Purported Opt-Out (discussed above at Background § F), but that is incorrect. Judge Failla held in *Brooks* that the purported opt outs sent on behalf of the five petitioners there did not have the effect of rejecting the changes in the Updated HBO Max Terms if those petitioners accessed the HBO Max platform after the Updated HBO Max Terms came into effect, as Plaintiff has done here:

> To the extent discovery reveals that Petitioners did assent to the NAM Agreement, e.g., by accessing the HBO Max platform after the December 2022 Terms came into effect as an authorized user on another individual's account, the rejection letters are also irrelevant. The NAM Agreement was an open offer that Petitioners were free to accept at any time; Petitioners could not reject the December 2022 Terms via letter and then continue to use the HBO Max platform without those terms applying to them.

*Brooks*, 2024 WL 3330305, at *15.

In any event, Plaintiff is bound by the Max Terms, which do not provide the right to reject the arbitration agreement contained therein. When Defendant replaced HBO Max with Max on May 23, 2023, HBO Max ceased to exist in the United States. (Decl. ¶ 4, 14.) Max was an entirely new platform with enhanced features and additional content that was not available in HBO Max.[10] (*Id.* ¶ 4.) The Max Terms therefore superseded and novated any prior HBO Max Terms of Use, including the arbitration agreements contained in the Superseded Terms, with respect to all users of Max. As the Max Terms make clear, there is no right to reject the Max arbitration agreement. (*Supra* Background § H.) Every subscriber who elected to use the new Max streaming platform affirmatively agreed to be bound by the Max Terms and the arbitration agreement contained therein, including Plaintiff.

There are also serious questions about whether Plaintiff's Purported Opt-Out was duly authorized or is authentic:

**First**, it is well settled that "[p]ersons dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's authority." *Reaper v. ACE Am. Ins. Co.*, No. 21-cv-05876-HSG, 2022 WL 3348575, at *4 (N.D. Cal. Aug. 12, 2022) (alteration in original) (citation omitted). There is good reason to question whether Plaintiff's counsel had such authority here. Plaintiff's counsel have submitted identical Purported Opt-Outs on behalf of all individuals they claim to represent in their mass arbitration, including thousands of individuals who never had HBO Max accounts and could not have opted out of anything. (*See supra* Background § F.)

The Updated HBO Max Terms also include provisions that Plaintiff's counsel themselves would like to avoid because they require adherence to Rule 11 standards and, for the first time,

---

10 In his motion to remand, Plaintiff conflates HBO Max and Max, asserting that Defendant "owns a streaming service known as either HBO Max or simply Max." (ECF No. 15 at 1.) That is incorrect. The two platforms are distinct and HBO Max no longer exists. (*See* Decl. ¶ 4.)

authorize arbitrators to award sanctions against counsel. Plaintiff's counsel was presumably interested in avoiding such sanctions, particularly in view of their failure to vet claimants, and was therefore required to obtain informed consent from any clients with respect to opting out of the Updated HBO Max Terms. If the Court were to give any credence to the Purported Opt-Outs, discovery would be needed to determine whether informed consent was obtained.

**Second**, under bedrock rules of evidence, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Plaintiff's Purported Opt-Out appears to bear some kind of digital signature, but there is no electronic verification of that "signature" or any other confirmation that it reflects Plaintiff's consent. (Exs. 6–7.)

### F. Plaintiff Has Waived the Right To Compel Arbitration Under the Superseded Terms

Plaintiff also cannot invoke the arbitration clause in the Superseded Terms for another reason: he has waived any right to arbitration under those terms. A party waives a right to arbitrate under an agreement where he acts "inconsistently with that right." *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023) (citation omitted); *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it.").

Courts have held that, by filing an action in court, a party to an arbitration agreement acts inconsistently with the right to arbitrate and thus waives that right. *See, e.g.*, *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 862 (2d Cir. 1985). Here, Plaintiff has filed this action in court and hence waived the right to arbitration.

Waiver is even more clearly established where a party first pursues claims in arbitration and then later files an action in court. *See United Paper Mach. Corp. v. DiCarlo*, 19 A.D.2d 143, 145 (4th Dep't 1963) (by filing in court after pursuing arbitration the plaintiff "waived and abandoned its right to arbitration and it must lie in the bed it made"), *aff'd*, 14 N.Y.2d 814 (1964). In that instance, there can be no doubt that the plaintiff knew of the arbitration right and "knowingly relinquish[ed]" the right. *Brown*, 2023 WL 8800728, at *3 (alteration in original) (citation omitted).

That is precisely what happened here. In April 2023, Plaintiff's counsel affirmed that Plaintiff was among the claimants on whose behalf Plaintiff's counsel threatened to assert arbitrations as part of their mass arbitration effort. (*Supra* Background § E.) Yet, less than a year later, Plaintiff filed this lawsuit in court. Plaintiff has knowingly relinquished the right to compel arbitration under the Superseded Terms by invoking those terms and later—with knowledge of those terms—filing an action in court.

### G. The Small Claims Carveout in the Arbitration Clause Does Not Apply

Plaintiff argues that this action is carved out from the arbitration mandate in the arbitration clause because he filed in a small claims court. Plaintiff is wrong. Under the Terms a user may bring a claim in small claims court, but only if the claim "is not removed." (*E.g.*, Ex. 4 § 5.4(a) (Max Terms).) Because Defendant has properly removed this action, the small claims exception in the arbitration clause no longer applies. Courts interpret contractual terms in accordance with "their plain meaning." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citation omitted). The Terms provide that "either party may elect to have claims heard in small claims court seeking only individualized relief, **so long as the action is not removed or appealed to a court of general jurisdiction.**" (Ex. 3 § 5.4(a); Ex. 4 § 5.4(a) (emphases added); Ex. 2 § 5.4(a) (substantially the same, except adding "remains in that court"

before "is not removed")..) The Terms further provide that any court action outside of small claims court must proceed in New York. (Ex. 2 § 5.9; Ex. 3 § 5.10; Ex. 4 § 5.10.)

As courts have held when construing substantively identical provisions, these terms permit removal of a small claims action and, once removed, the plaintiff no longer has the contractual right to remand to the small claims court. *See, e.g.*, *Davis v. Ally Fin. Inc.*, No. CV 23-22897 (RMB-MJS), 2024 WL 2239144, at *4 (D.N.J. May 17, 2024) (denying remand to small claims court where arbitration clause allowed small claims proceedings only "unless such action is transferred, removed, or appealed to a different court" (citation omitted)); *Beautyman v. Lilyandmajor, LLC*, No. 20-81290-CV, 2021 WL 1264228, at *6 (S.D. Fla. Feb. 1, 2021) (denying remand to small claims court where arbitration clause allowed small claims proceedings only "so long as the matter remains in such court" (citation omitted)). Plaintiff's argument that the small claims carveout in the Terms applies ignores the unambiguous terms of the arbitration clause.

## II. PLAINTIFF SHOULD BE ENJOINED FROM COMMENCING ARBITRATION UNTIL HE COMPLIES WITH THE PRE-FILING REQUIREMENTS UNDER THE UPDATED TERMS

Although Plaintiff should be compelled to arbitrate his claim, the Court should enjoin him from commencing arbitration until he satisfies the conditions precedent required under the Updated Terms.[11] The Updated Terms provide that a claimant who intends to initiate arbitration must first send Defendant a written Notice of Dispute. (Ex. 3 § 5.4(b); Ex. 4 § 5.4(b).) A user may not initiate arbitration until 60 days after submitting a compliant Notice of Dispute. (*Id.*)

---

[11] The Max Terms and December 2022 HBO Max Terms of Use contain identical requirements.

Moreover, the Court may "enjoin the filing or prosecution of an arbitration" if these pre-arbitration requirements are not met. (*Id.*)

The Updated Terms provide that a Notice of Dispute must set forth, among other things, (i) "how and when [the user] became a subscriber, [the user's] subscription history, and current subscription status" and (ii) "a description of the nature and basis of the claim or dispute, including any relevant facts," including "facts pertaining to your use of [the service] and the platform(s) on which you watch it (e.g., via connected TV, iPhone, desktop)." (Ex. 3 § 5.4(b); Ex. 4 § 5.4(b).) The Notice of Dispute must also include "a personally signed statement from the claimant (and not their counsel) verifying the accuracy of the contents of the Notice." (*Id.*)

Plaintiff's notice of dispute fails to meet these requirements for several reasons. To start, the notice does not state how and when Plaintiff became a subscriber, his subscription history, or his current subscription status. (Ex. 7 (Notice of Dispute).) It also does not include relevant facts regarding the nature and basis of the claim. For example, the notice vaguely refers to claims "under . . . state law" without any reference to specific state laws under which he purports to assert claims. (*Id.*) Further, the notice contains no details regarding Plaintiff's use of the service or the platforms on which he watched content. (*Id.*) And the notice does not include a certification from Plaintiff verifying the accuracy of the contents of the notice. (*Id.*) Because plaintiff has not met the pre-arbitration notice and informal dispute resolution requirements in the Updated Terms, the Court should enjoin him from commencing arbitration until he satisfies these procedural prerequisites.

## III. THIS ACTION MUST BE STAYED PENDING ARBITRATION

The court must stay the action for the pendency of the arbitral proceedings. Under the FAA, in any lawsuit "referable to arbitration," as here, the court "**shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the

terms of the agreement." 9 U.S.C. § 3 (emphasis added). As the Supreme Court held just last month, this "plain statutory text requires a court to stay the proceeding" upon request of a party. *Smith v. Spizzirri*, 144 S. Ct. 1173, 1177 (2024). This legislative mandate "overrides any discretion a district court might otherwise have had to dismiss a suit." *Id.* at 1178. Because Plaintiff's claims must be arbitrated and Defendant has requested a stay, this action must be stayed pending the outcome of any arbitration.

## CONCLUSION

For the foregoing reasons, (i) Plaintiff should be compelled to arbitrate his purported claims before NAM, (ii) any arbitration should be enjoined until he meets the pre-filing procedural requirements set forth in the Max Terms, and (iii) this action should be stayed.

Dated: New York, New York
September 25, 2024

Respectfully submitted,

*<u>/s/ Michael W. McTigue Jr.</u>*

Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Counsel for Defendant*
*WarnerMedia Direct, LLC*