UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JONATHAN LALEWICZ, Plaintiff, | : | Civil Action No. 1:24-CV-06173-JMF |
| v. | : | |
| WARNERMEDIA DIRECT, LLC, Defendant. | : | |

**DEFENDANT WARNERMEDIA DIRECT, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant WarnerMedia Direct, LLC*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

I. DEFENDANT HAS NOT WAIVED ITS RIGHT TO REMOVE ..... 3

II. PLAINTIFF HAS REPEATEDLY REFUSED TO ARBITRATE BEFORE NAM ..... 4

III. PLAINTIFF IS BOUND BY THE UPDATED TERMS REQUIRING ARBITRATION BEFORE NAM ..... 6

A. The Max Terms Superseded All Previous Versions of the HBO Max Terms ..... 7

B. Courts Routinely Apply Updated Arbitration Provisions To Pending Litigation ..... 9

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*ACE American Insurance Co. v. Guerriero*,
738 F. App'x 72 (3d Cir. 2018) ....................................................6

*Aluminum Brick & Glass Workers International Union v. AAA Plumbing Pottery Corp.*,
991 F.2d 1545 (11th Cir. 1993) ....................................................6

*Beijing Shougang Mining Investment Co. v. Mongolia*,
11 F. 4th 144 (2d Cir. 2021) ....................................................6

*Brooks v. WarnerMedia Direct, LLC*,
No. 23 Civ. 11030 (KPF), 2024 WL 3330305 (S.D.N.Y. July 8, 2024) ................2, 7, 8, 9

*Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, 180 F.
Supp. 3d 236 (S.D.N.Y. 2016)....................................................9

*Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co.*,
773 F.3d 110 (2d Cir. 2014)....................................................3, 4

*Dasher v. RBC Bank (USA)*,
882 F.3d 1017 (11th Cir. 2018) ....................................................10

*Duraku v. Tishman Speyer Props., Inc.*,
714 F. Supp. 2d 470 (S.D.N.Y. 2010)....................................................9

*Eisen v. Venulum Ltd.*,
244 F. Supp. 3d 324 (W.D.N.Y. 2017) ....................................................6

*Grimaldi v Sangi*,
177 A.D.3d 1208 (3d Dep't 2019) ....................................................7

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
372 F.2d 753 (2d Cir. 1967)....................................................4

*International Union v. Cummins, Inc.*,
434 F.3d 478 (6th Cir. 2006) ....................................................6

*INTL FCStone Financial, Inc. v Jacobson*,
No. 19 C 1438, 2019 WL 2356989 (N.D. Ill. June 4, 2019) ....................................................5

*M & G Polymers USA, LLC v. Tackett*,
574 U.S. 427 (2015)....................................................5

*Northville Industries Corp. v. Fort Neck Oil Terminals Corp.*,
100 A.D.2d 865 (2d Dep't 1984), *aff'd*, 64 N.Y.2d 930 (1985) ....................................................8

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018) ........ 9

*Russell v. Citigroup, Inc.*,
748 F.3d 677 (6th Cir. 2014) ........ 10

*Taylor v. Unumprovident Corp.*,
No. 1:03CV1009, 2005 WL 3448052 (E.D. Tenn. Dec. 14, 2005) ........ 3

*Transatlantic Lines LLC v. Amergent Techs, LLC*,
186 F. Supp. 3d 223 (D. Conn. 2016) ........ 5

*Wu v. Uber Technologies, Inc.*,
78 Misc. 3d 551, 2022 N.Y. Slip Op. 22388 (Sup. Ct. Bronx Cnty. 2022), *aff'd*,
219 A.D.3d 1208 (1st Dep't 2023) ........ 9

**Other Authorities** **Page(s)**

22A N.Y. Jur. 2d Contracts § 462 ........ 7

Press Release, Warner Bros. Discovery, "Warner Bros. Discovery's Enhanced Streaming Platform Max Launches Today" (May 23, 2023), https://press.wbd.com/us/media-release/max/warner-bros-discoverys-enhanced-streaming-platform-max-launches-today ........ 9

## PRELIMINARY STATEMENT

Plaintiff should be compelled to arbitrate before NAM[1] because Plaintiff does not dispute that he (i) was provided conspicuous notice of the Updated HBO Max Terms and the Max Terms and (ii) manifested assent to the Updated Terms. The Opposition does not show otherwise:

***First***, the small claims court clause of this arbitration provision does not waive Defendant's right to remove this action. To the contrary, the Terms unambiguously permit a party to remove a small claims court action to federal court. The right of the parties to seek remedies in small claims court is followed by the unambiguous proviso "so long as the action is not removed." That proviso limits the right to proceed in small claims court and extinguishes that right once the action is removed. The Terms thus expressly reserve each party's right to have disputes heard in federal court. Plaintiff has not cited any authority for the contention that a party waives the right to removal in an agreement where that same agreement expressly reserves the right to have disputes heard in federal court. The small claims court exception is not illusory as a matter of law because it provides for mutually enforceable rights: Defendant and its customers each have the right to (i) seek remedies in small claims courts and (ii) remove the case to federal court and seek arbitration, but only if the statutory requirements for removal are met.

***Second***, Plaintiff asserts that "WarnerMedia makes no argument in its motion that Mr. Lalewicz did anything that . . . constituted a refusal to arbitrate." (Opp. at 5.) Not so. As set forth in the Motion (at 12-13), Plaintiff has at all times refused to agree to submit his claim against Defendant to arbitration before NAM, including in the very Opposition where Plaintiff asserts he has not refused to arbitrate. Well before Plaintiff filed his action in Tennessee small claims court,

---

[1] Capitalized terms have the meanings ascribed to them in Defendant's Motion to Compel Arbitration, ECF No. 45 ( "Motion" or "Mot.").

Plaintiff's counsel refused on his behalf (and on behalf of numerous other clients) to arbitrate claims before NAM. Under Section 4 of the FAA, such conduct constitutes a refusal to arbitrate. Plaintiff's argument that he has not refused to arbitrate because he commenced an action in small claims court misses the point: Plaintiff's persistent refusal to arbitrate before NAM according to the Updated Terms is what constitutes his refusal to arbitrate.

***Third***, Plaintiff's Purported Opt-Out from the Updated Terms was ineffective, and accordingly the Updated Terms apply to his claim. Plaintiff does not address the substantial reasons to doubt that the Purported Opt-Out was duly authorized or authentic. The Opposition fails to directly address these points. (*See* Mot. at 18-19.) In any event, Plaintiff does not dispute that the Updated HBO Max Terms superseded the previous Terms, and that Plaintiff manifested unambiguous assent to the Updated HBO Max Terms by continuing his subscription after receiving notice of the Updated HBO Max Terms and streaming video content on HBO Max. Judge Failla of the Southern District of New York ruled in *Brooks* that the petitioners there "could not reject the December 2022 Terms via letter and then continue to use the HBO Max platform without those terms applying to them." *Brooks v. WarnerMedia Direct, LLC*, No. 23 Civ. 11030 (KPF), 2024 WL 3330305, at *15 (S.D.N.Y. July 8, 2024).

Further, Plaintiff's Purported Opt-Out could not reject the arbitration agreement in the Max Terms, because Plaintiff had no right to reject the Max Terms. As the Motion explains (at 18), Max was an entirely new platform with enhanced features and additional content not available in HBO Max. The Max Terms contained a provision superseding all previous versions of the HBO Max Terms of Use with respect to all users of Max. Thus, the Max Terms entirely replaced the previous Terms, and Plaintiff cannot dispute that he agreed to the Max Terms.

***Fourth***, Plaintiff erroneously asserts that "[c]ourts throughout the country have

disfavored attempts to change arbitration agreements after a party learned of the dispute." (Opp. at 11.) But courts routinely apply updated agreements even after a litigation has commenced.

For the foregoing reasons, Defendant requests that the Court compel Plaintiff to arbitrate his claims before NAM as the Updated Terms require him to do.

## ARGUMENT

### I. DEFENDANT HAS NOT WAIVED ITS RIGHT TO REMOVE

As detailed in Defendant's Opposition to the Motion to Remand (ECF No. 48 at 16-18), the inclusion of the small claims court exception in the Terms is not a waiver of Defendant's statutory right of removal, much less a clear and unequivocal one, given that all versions of the Terms expressly (i) permit parties to remove cases from small claims court and (ii) require that actions not proceeding in arbitration proceed in state or federal court in New York.

Indeed, the Second Circuit has held that a contractual clause that begins with the phrase "so long as" "serves as a proviso, introducing a condition that narrows the broader initial proposition." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 115 (2d Cir. 2014). In *Chesapeake*, the Second Circuit interpreted a provision of a bond indenture providing that Chesapeake "shall be permitted to exercise its option to redeem the Notes pursuant to this Section 1.7 **so long as** it gives the notice of redemption" elsewhere required by the indenture "during the Special Early Redemption Period." *Id*. at 112. The court held that the "so long as" clause was unambiguous:

> The governing indenture **unambiguously** provided that, in order to exercise the right to early redemption at the Special Price, Chesapeake was obliged, as the indenture trustee has correctly insisted, to effectuate the redemption within the specified Special Early Redemption Period upon notice of 30 to 60 days also given within that period.

*Id*. at 117 (emphasis added). Here, the Terms provide that "either party may elect to have claims heard in small claims court seeking only individualized relief, **so long as the action is not**

**removed or appealed to a court of general jurisdiction**." (Reply Ex. 1 § 5.4(a), Reply Ex. 2. § 5.4(a) (emphasis added)); (Reply Ex. 3 § 5.4(a) (substantially the same, except adding "remains in that court" before "is not removed").) Thus, the parties' right to "elect to have claims heard in small claims court seeking only individualized relief" is followed by a proviso "so long as the action is not removed," which limits that right. The proviso extinguishes the parties' right to seek remedies in small claims court once the action is removed. Accordingly, under the plain meaning of the small claims court exception in the Terms, either party can be heard in small claims court instead of arbitration, provided that the action is not removed to federal court.

Contrary to Plaintiff's assertion (Opp. at 3-4), interpreting the small claims court exception as extinguishing the right to seek remedies in small claims court upon removal does not render the clause illusory: The rights and obligations in the clause are mutual. All versions of the Terms expressly provide that "**either party**" may seek remedies in small claims court just like either party may remove a case from small claims court. (*See* Reply Ex. 1 § 5.4(a); Reply Ex. 2 § 5.4(a); Reply Ex. 3 § 5.4(a).) It is well established that there must be a lack of mutuality before a promise can be found illusory. *See Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) (party's "promise to arbitrate was sufficient consideration to support [the other party's] promise to arbitrate"). The cases cited by Plaintiff make this clear. S*ee M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441 (2015) (Sixth Circuit erred in holding promise illusory; "a promise that is 'partly' illusory is by definition not illusory").

## II. PLAINTIFF HAS REPEATEDLY REFUSED TO ARBITRATE BEFORE NAM

Plaintiff argues that he has not refused to arbitrate, because his decision to commence an action in small claims court "cannot be considered a failure, neglect, or refusal to arbitrate." (Opp. at 5.) But Defendant has not so contended. Instead, as the Motion explains (at 12-13),

Plaintiff has refused to arbitrate before NAM under the Updated Terms at all times, both before and after Plaintiff commenced his action in small claims court. In the Opposition, Plaintiff reiterates this refusal, requesting that "[i]f this Court nevertheless compels arbitration, it should compel WarnerMedia to arbitrate in the AAA." (Opp. at 13.) Such conduct constitutes a refusal to arbitrate Section 4 of the FAA. *See INTL FCStone Fin., Inc. v Jacobson*, No. 19 C 1438, 2019 WL 2356989, *6 (N.D. Ill. June 4, 2019) (defendant refused to arbitrate where defendant insisted upon arbitration before an arbitral body not specified in parties' arbitration agreement).

None of the cases that Plaintiff cites supports his contention that he has not refused to arbitrate. In *Transatlantic Lines LLC v. Amergent Techs, LLC*, 186 F. Supp. 3d 223 (D. Conn. 2016), the parties did not, as Plaintiff wrongly states, have a dispute "over the correct arbitral forum." (Opp. at 7.) Instead, the arbitration agreement there provided that "[a]ll disputes under this Agreement shall be resolved through arbitration" but did not "specify the forum for arbitration." *Transatlantic*, 186 F. Supp. 3d at 224-25 (alteration in original) (citation omitted). The court denied petitioner's motion to compel arbitration in Connecticut and reasoned that the respondent did not refuse to arbitrate by filing an arbitration in California because the arbitration clause permitted arbitration anywhere.[2] Here, Plaintiff has persistently refused to arbitrate before

[2] Plaintiff's other cases **support** Defendant's position that Plaintiff refused to arbitrate before NAM. In *Beijing Shougang Mining Investment Co. v. Mongolia*, 11 F. 4th 144 (2d Cir. 2021), the parties participated in an international arbitration for **seven years** before the tribunal held that they lacked jurisdiction, and thus, the court held that the respondent had not refused to arbitrate. In *International Union v. Cummins, Inc.*, 434 F.3d 478 (6th Cir. 2006), the Sixth Circuit affirmed a district court's order compelling arbitration and clarified that the requirement that a refusal to arbitration must be "unequivocal" was limited to the National Labor Relations Act (NLRA) context. *Id*. at 484-85. Similarly, *Aluminum Brick & Glass Workers International Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545 (11th Cir. 1993), clarified that "time period to bring an action begins [**under the NRLA**] to run when one party unequivocally refuses to arbitrate the dispute." *Id*. at 1548. Finally, in *ACE American Insurance Co. v. Guerriero*, 738

*(cont'd)*

NAM, including in the very Opposition in which he argues that he has not refused to arbitrate.

## III. PLAINTIFF IS BOUND BY THE UPDATED TERMS REQUIRING ARBITRATION BEFORE NAM

Plaintiff does not, and cannot, dispute that (i) Defendant provided conspicuous notice of the Updated Terms and (ii) Plaintiff unambiguously manifested assent to the Updated Terms. (*See* Mot. at 14-17; Reply Ex. 4 ¶¶ 18-19 ("Decl.").) Plaintiff contends that the "new terms" cannot be enforced against him due to his Purported Opt-Out. (*See* Opp. at 9-11.) As the Motion explains (at 18-19), it is doubtful that the Purported Opt-Out was duly authorized or authentic.

Judge Failla ruled in *Brooks* that the purported opt-outs sent on behalf of the five petitioners there **did not** have the effect of rejecting the changes in the Updated Terms if those petitioners accessed the HBO Max platform after the Updated Terms came into effect:

> The NAM Agreement was an open offer that Petitioners were free to accept at any time; Petitioners could not reject the December 2022 Terms via letter and then continue to use the HBO Max platform without those terms applying to them.

*Brooks*, 2024 WL 3330305, at *15. Here, unlike in *Brooks*, Plaintiff does not dispute Plaintiff continued his HBO Max subscription after receiving notice of the Updated HBO Max Terms, and streamed content on both the HBO Max platform and Max platform after the Updated Terms came into effect. (Decl. ¶¶ 18-19.) Judge Failla's conclusion is consistent with the well-settled rule under New York law that a "'a subsequent contract regarding the same matter will supersede the prior contract,'" and a general merger clause "serves to require 'full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing.'" *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 333-34 (W.D.N.Y. 2017) (refusing

F. App'x 72 (3d Cir. 2018), the Third Circuit affirmed the district court's holding that the defendant refused to arbitrate "when [defendant] presented [plaintiff] with a draft complaint," before filing the draft complaint, and compelled the defendant to arbitration. *Id*. at 76.

to consider two previous agreements where third agreement superseded those agreements, but denying motion to compel arbitration because arbitration agreement required application of foreign law that precluded plaintiff's cause of action). Here, the Updated Terms both unambiguously supersede all provisions of the Superseded Terms:

> You agree that any arbitrations between you and [Defendant] will be subject to this Section 5.4 and not to any prior arbitration agreement you had with [Defendant] . . . this Section 5.4 amends any prior arbitration agreement you had with [Defendant], including with respect to claims that arose before this or any prior arbitration agreement . . . This Agreement, together with the additional conditions of your Subscription, constitute the entire agreement between you and [Defendant] with respect to this subject matter and supersede all prior or contemporaneous written or oral agreements between you and [Defendant] with respect to this subject matter, including but not limited to any prior account or Subscription . . .

(Reply Exs. 1, 2 §§ 5.4(g), 5.15.) Thus, the Updated Terms expressly superseded the Superseded Terms and contain a merger clause, so the rejection of changes provision that Petitioners invoke and the Purported Opt-Out are extrinsic evidence and are therefore irrelevant.[3]

**A. The Max Terms Superseded All Previous Versions of the HBO Max Terms**

Under New York law, "[a] novation may result from the substitution of a new obligation or contract between the same parties, with the intent to extinguish the old obligation or contract." 22A N.Y. Jur. 2d Contracts § 462. A novation has four elements: "(1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract." *Grimaldi v Sangi*, 177 A.D.3d 1208, 1210 (3d Dep't 2019). All four are present here:

***First***, Plaintiff concedes that the Superseded Terms govern his claim and does not contest

---

[3] In any event, nothing in the section of the Superseded Terms that Plaintiff relies on allows Plaintiff to both (1) reject the arbitration agreement in the Updated HBO Max Terms and (2) continue to use the HBO Max platform after the Updated Terms came into effect without being bound by the arbitration agreement contained therein.

the validity of the Superseded Terms.

***Second***, Plaintiff does not and cannot dispute that he agreed to the Max Terms. On May 24, 2023, after Plaintiff signed into the Max platform, he was presented with a stand-alone screen informing him that "[b]y selecting 'Start Streaming,' you agree to the Max Terms of Use." (Decl. ¶ 19.) In *Brooks*, Judge Failla held that a user assented to the Max Terms when he clicked the "Start Streaming" button directly below the hyperlinked Terms on the Max sign-in page. 2024 WL 3330305, at *14 ("[T]he Court finds that clicking the 'Start Streaming' button *does* constitute unambiguous assent to the May 2023 Terms and the NAM Agreement therewith.").

***Third***, the Max Terms extinguished all previous versions of the arbitration agreement in the HBO Terms of Use. (*See supra* at 7; Reply Ex. 2 §§ 5.4(g), 5.15.) Sections 5.4(g) and 5.15 clearly express the intent that the arbitration agreement in the Max Terms supersede the arbitration agreement in "any prior arbitration agreement you had with Max," including the Superseded Terms. (*Id.*) *See Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 866-67 (2d Dep't 1984) (a new agreement providing that it "shall be in lieu of and shall supersede any other agreements existing as of the date hereof between" extinguished a previous agreement), *aff'd*, 64 N.Y.2d 930 (1985).

***Fourth***, Plaintiff does not explicitly challenge the validity of the Max Terms, nor could he. Defendant provided an entirely new platform with enhanced features and additional content that were not available in HBO Max in exchange for Plaintiff's agreement to the Max Terms. (Mot. at 18; Decl. ¶ 4.) For example, Max provided "35,000 hours of content, more than twice that of HBO Max for the same price."[4] Accordingly, all of Plaintiff's rights and obligations

---

4 Press Release, Warner Bros. Discovery, "Warner Bros. Discovery's Enhanced Streaming Platform Max Launches Today" (May 23,2023), https://press.wbd.com/us/media-release/max/warner-bros-discoverys-enhanced-streaming-platform-max-launches-today.

under the previous HBO Max Terms of Use were extinguished when Plaintiff agreed to the Max Terms, including any right in the previous Terms to reject changes in the new terms.

**B. Courts Routinely Apply Updated Arbitration Provisions To Pending Litigation**

The Max Terms explicitly apply "to claims that arose before this or any prior arbitration agreement." (Reply Ex. 2 § 5.4(g).) Such retroactive application language is routinely upheld by courts. *See, e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 (S.D.N.Y. 2018) (terms implemented in 2011 and modified in 2014 and 2015 applied to claims that accrued in 2009); *Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016) ("The Second Circuit has indicated that . . . an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate"); *Duraku v. Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 473-74 (S.D.N.Y. 2010) (applying arbitration clause adopted in 2010 to claims filed in a lawsuit in 2009).

That Plaintiff threatened arbitration after the Updated HBO Max Terms were updated does not change that result. Judge Failla specifically rejected this argument and held that "[t]he Court does not agree that the NAM Agreement's retrospective application renders it unconscionable." *Brooks*, 2024 WL 3330305, at *17. Courts enforce updated provisions to compel arbitration of claims asserted in litigation that is pending at the time of the update. For example, in *Wu v. Uber Technologies, Inc.*, 186 N.Y.S.3d 500 (Sup. Ct. 2022), a New York court held that a car service's updated arbitration provision compelled arbitration of a personal injury suit filed two months before the update, because the plaintiff was on notice of and agreed to the update, and continued to use the service after the updated terms took effect. *Id*. at 506–09.

The out-of-circuit cases that Plaintiff cites to argue that "[c]ourts throughout the country have disfavored attempts to change arbitration agreements after a party learned of a dispute" are inapposite. (Opp. at 11.) In *Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014), a plaintiff

had initiated a class action against defendant in January 2012; in January 2013, while the lawsuit was still in progress, that same plaintiff signed an employment agreement requiring him to arbitrate class claims. Unlike the Updated Terms, the updated employment agreement in *Russell* only applied to disputes "that begin—that arise—in the present or future." *Id.* at 679. The Sixth Circuit concluded that "the parties signed this agreement to head off future lawsuits, not to cut off existing ones." *Id*. at 680. In *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1021 (11th Cir. 2018), a plaintiff filed an action and defendant moved to compel arbitration, which was denied. The defendant appealed the decision, and while the various appeals were underway, that defendant distributed an amended arbitration agreement three years after the original action was commenced. *Id*. at 1024. The court emphasized that the plaintiff's "uncounseled response purportedly was silence." *Id*. at 1023. Here, Plaintiff had not commenced any action and, unlike the *Dasher* plaintiff, affirmatively accepted both the Updated HBO Max Terms and Max Terms.[5]

**CONCLUSION**

For the foregoing reasons, (i) Plaintiff should be compelled to arbitrate his purported claims before NAM upon his satisfaction of the pre filing requirements set forth in the Updated Terms and (ii) this action should be stayed for the duration of that arbitration.

---

[5] Plaintiff alternatively argues that if "this Court nevertheless compels arbitration, it should compel WarnerMedia to arbitrate in the AAA." (Opp. at 13.) As the Motion explains, Plaintiff has waived any right to arbitration under the Superseded Terms, given that Plaintiff first noticed his intention to pursue claims in arbitration and then later filed an action in small claims court. (Mot. at 19-20.) Plaintiff does not address this argument anywhere in the Opposition.

Dated: New York, New York
October 30, 2024

Respectfully submitted,

/s/ *Michael W. McTigue Jr.*
Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant*
*WarnerMedia Direct, LLC*