UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                 :

JONATHAN LALEWICZ,                    :

                          Plaintiff,        :

                                        :           24-CV-6173 (JMF)

         -v-                     :

                                        :        OPINION AND ORDER

WARNERMEDIA DIRECT, LLC,       :

                                      :

                        Defendant.     :

                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Jonathan Lalewicz, a subscriber to HBO Max and Max (together, the "Platforms"), brings claims against Defendant WarnerMedia Direct, LLC ("WarnerMedia"), the operator of the Platforms, under the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* Both parties agree that the merits of Lalewicz's claims are not for this Court to decide; instead, the Court is called upon to determine the threshold question of where his claims should be heard.[1] Lalewicz contends that the case should be remanded to the small claims court in Tennessee in which he first filed the case (before WarnerMedia removed it to the United States District Court for the Eastern District of Tennessee, which then transferred the case here). WarnerMedia contends that the case must be submitted to arbitration.

       The parties' dispute turns on the Platforms' Terms of Use, six versions of which were in effect during the time period relevant to this case. Broadly speaking, these agreements call for arbitration of certain categories of claims, and it is undisputed that Lalewicz's claims fall within

---

[1] Even though both parties agree that the merits are not for this Court to resolve, WarnerMedia has submitted two letters notifying the Court of supplemental authorities pertinent to the merits. *See* ECF Nos. 65, 67. The Court need not and does not consider those letters.

those categories.  But each version of the Terms of Use also provides that, "[n]otwithstanding" the mandatory arbitration provision, either party may bring an action like Lalewicz's "in small claims court . . . so long as the action is not removed or appealed to a court of general jurisdiction."  *E.g.*, ECF No. 43-4 ("HBO Max Dec. 20, 2022 Terms"), at 33.  Elsewhere, the Terms state that the parties agree to resolve disputes "through binding arbitration or small claims court instead of in courts of general jurisdiction."  *Id.* at 32.  The question is how to reconcile these provisions.  Lalewicz argues that they barred WarnerMedia's removal of the case in the first instance; WarnerMedia argues that they permitted removal of the case and that, with that removal, arbitration is now the only forum available to the parties.

For the reasons that follow, the Court concludes that, while the question is a close one, Lalewicz's reading of the parties' agreements is more compelling than WarnerMedia's.  His reading is more consistent with the language of the different versions of the Terms of Use and with the parties' contract as a whole.  And to the extent that WarnerMedia drafted the language of the Terms of Use and imposed them on Lalewicz, any ambiguity should be construed in his favor.  Accordingly, the Court concludes that Lalewicz's motion to remand the case must be GRANTED.  WarnerMedia's motion to compel arbitration is therefore DENIED as moot.

## BACKGROUND

The facts relevant to the parties' dispute over the proper forum are undisputed.

### A.  The Terms of Use

Lalewicz began using the Platforms on December 14, 2020, when he subscribed to HBO Max.  ECF No. 48 ("Def.'s Remand Opp'n"), at 4.  When creating his account with HBO Max, he was shown and "required to accept" the platform's then-applicable Terms of Use.  *Id.* WarnerMedia updated the Terms of Use from time to time thereafter, including when it

"replaced HBO Max with Max, an enhanced service." *Id.* at 5.  In each instance, Lalewicz was notified of the new Terms of Use, at a minimum, through "direct emails" or "pop-up notifications within the . . . streaming platform." *Id.*  In all, there are six versions of the Terms of Use that the parties cite to in their motions, beginning with the initial HBO Max Terms of Use that were in force as of April 29, 2020, and ending with the Max Terms of Use that were in force as of February 27, 2024.  *See* ECF No. 43-1 ("HBO Max Apr. 29, 2020 Terms"); ECF No. 43-2 ("HBO Max Oct. 19, 2021 Terms"); ECF No. 43-3 ("HBO Max Nov. 1, 2022 Terms"); HBO Max Dec. 20, 2022 Terms; ECF No. 43-5 ("Max May 23, 2023 Terms"); ECF No. 43-6 ("Max Feb. 27, 2024 Terms").

The parties disagree about which version of the Terms of Use is the operative one for purposes of this case, but the six versions are, in most respects relevant here, identical.  First, the Terms of Use all have a section titled "Dispute Resolution," which contains some version of the following preamble (referring to the subscriber as "you" and WarnerMedia as "WM"):

> In the unlikely event that you're not satisfied with customer service's solution (or if WM has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.

HBO Max Apr. 29, 2020 Terms 33; *see also* HBO Max Oct. 19, 2021 Terms 40-41; HBO Max Nov. 1, 2022 Terms 31-32; HBO Max Dec. 20, 2022 Terms 32; Max May 23, 2023 Terms 26; Max Feb. 27, 2024 Terms 8.[2]

The Terms of Use then explain the arbitration process and the particulars of the "Arbitration Agreement," beginning with the claims that are "subject to arbitration":

---

[2]     Due to inconsistent pagination in the various Terms of Use, citations to ECF Nos. 43-1, 43-2, 43-3, 43-4, 43-5, and 43-6 are to the page number or numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

> Claims Subject to Arbitration: WM and you agree to arbitrate all disputes and
> claims between us, except for claims arising from bodily injury or that pertain to
> enforcing, protecting, or the validity of your or our intellectual property rights (or
> the intellectual property rights of any of our licensors, affiliates and partners).

HBO Max Apr. 29, 2020 Terms 34; *see also* HBO Max Oct. 19, 2021 Terms 44; HBO Max Nov.

1, 2022 Terms 32-33; HBO Max Dec. 20, 2022 Terms 32; Max May 23, 2023 Terms 27; Max

Feb. 27, 2024 Terms 8-9.  Significantly, however, the Terms of Use then carve some disputes out

of that arbitration mandate.  The earlier and later versions of the Terms frame the exception

slightly — but relevantly — differently.  The earlier versions provide that, "[n]otwithstanding

the foregoing, either party *may bring an action in* small claims court seeking only individualized

relief, so long as the action *remains in that court and* is not removed or appealed to a court of

general jurisdiction."  HBO Max Apr. 29, 2020 Terms 35 (emphases added); HBO Max Oct. 19,

2021 Terms 45; HBO Max Nov. 1, 2022 Terms 33-34.  The later versions, beginning with the

version that were in force as of December 20, 2022, state that, "[n]otwithstanding the foregoing,

either party *may elect to have claims heard in* small claims court seeking only individualized

relief, so long as the action is not removed or appealed to a court of general jurisdiction."  HBO

Max Dec. 20, 2022 Terms 33 (emphasis added); *see* Max May 23, 2023 Terms 27-28; Max Feb.

27, 2024 Terms 9.

 The Terms of Use then address the division of responsibility between an arbitrator and a

court of competent jurisdiction.  Here too, the earlier and the later versions differ slightly.  The

earlier versions provide that "[a]ll issues are for the arbitrator to decide, except that issues

relating to the scope and enforceability of the arbitration provision or whether a dispute can or

must be brought in arbitration are for the court to decide."  HBO Max Apr. 29, 2020 Terms 36;

*see* HBO Max Oct. 19, 2021 Terms 47; HBO Max Nov. 1, 2022 Terms 35.  The later versions —

again, starting with the version in force as of December 20, 2022 — contain the same language

but further specify that "whether a dispute is subject to this Arbitration Agreement or a previous

arbitration provision between you and [WarnerMedia]," is also "for a court of competent

jurisdiction to decide."  HBO Max Dec. 20, 2022 Terms 37; *see* Max May 23, 2023 Terms 30;

Max Feb. 27, 2024 Terms 9.

      Finally, in a section titled "Governing Law and Venue," all but the three most recent

versions of the Terms of Use provide as follows (in nearly identical language):

> To the extent that a dispute is not subject to arbitration under [the "Dispute
> Resolution" section] of these Terms, that action shall be brought in the
> appropriate state or federal court located in New York County, New York; and we
> both irrevocably consent to the exclusive jurisdiction and venue of the state or
> federal courts in New York County, New York for the adjudication of all non-
> arbitral claims.

HBO Max Apr. 29, 2020 Terms 40; *see also* HBO Max Oct. 19, 2021 Terms 56; HBO Max Nov.

1, 2022 Terms 43-44.  The three most recent versions of the Terms of Use, which pertain to the

rebranded "Max" streaming service, have similar, but more expansive, language: In addition to

sending "disputes . . . not subject to arbitration" to state or federal court in New York County,

they also channel to those courts "any issues involving arbitrability or enforcement of any

provisions under" the "Dispute Resolution" section.  HBO Max Dec. 20, 2022 Terms 33; *see*

*also* Max May 23, 2023 Terms 39; Max Feb. 27, 2024 Terms 12.

      It is undisputed that Lalewicz used the Platforms throughout the time covered by all six

versions of the Terms.  That said, Lalewicz contends that the three later versions of the

arbitration agreement within the Terms of Use do not apply to him.  As he points out, all versions

of the Terms of Use included a provision allowing subscribers to "reject" any "future change" to

the arbitration agreement by sending notice "within 30 days" of notice of the change.  HBO Max

Apr. 29, 2020 Terms 39; *see* HBO Max Oct. 19, 2021 Terms 52; HBO Max Nov. 1, 2022 Terms

38; HBO Max Dec. 20, 2022 Terms 40-41; Max May 23, 2023 Terms 33; Max Feb. 27, 2024

Terms 10.  The three later versions of the agreements included detailed requirements for the contents of such an "opt-out" email, including that it would need to include "when and how [the subscriber] subscribed to [the Platform]" and a "personally signed" statement confirming rejection of the change.  HBO Max Dec. 20, 2022 Terms 40-41; *see* Max May 23, 2023 Terms 33; Max Feb. 27, 2024 Terms 10.  Lalewicz submitted a purported "opt-out" email dated January 5, 2023, indicating that he rejected the Platform's changes to the arbitration agreement reflected in the December 20, 2022 Terms of Use.  *See* ECF No. 49-6.

**B.  Lalewicz's Lawsuit**

All six versions of the Terms of Use require a subscriber who wishes to raise a claim against the relevant Platform to first submit a "Notice of Dispute" alerting the Platform to his or her claim.  HBO Max Apr. 29, 2020 Terms 35; *see* HBO Max Oct. 19, 2021 Terms 46; HBO Max Nov. 1, 2022 Terms 34; HBO Max Dec. 20, 2022 Terms 34; Max May 23, 2023 Terms 28; Max Feb. 27, 2024 Terms 9.  The earlier three versions of the Terms of Use apply this requirement only to a "party who intends to seek arbitration."  HBO Max Apr. 29, 2020 Terms 35; *see* HBO Max Oct. 19, 2021 Terms 46; HBO Max Nov. 1, 2022 Terms 34.  The later three versions extend the requirement to a "party who intends to . . . file a claim in small claims court."  HBO Max Dec. 20, 2022 Terms 34; *see* Max May 23, 2023 Terms 28; Max Feb. 27, 2024 Terms 9.  Lalewicz submitted a "Notice of Dispute" dated January 5, 2023.  ECF No. 49-7.

On April 4, 2024, Lalewicz filed this lawsuit against WarnerMedia in the General Sessions Court of Coffey County, Tennessee, a small claims court, alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*  *See* ECF No. 1-2.  On May 24, 2024, WarnerMedia removed the case to the United States District Court for the Eastern District of Tennessee, invoking federal question jurisdiction.  *See* ECF No. 1, ¶ 4.  Thereafter, Lalewicz

moved to remand the case back to the Tennessee small claims court, *see* ECF No. 12, and WarnerMedia moved both to transfer the case to this Court, *see* ECF No. 13, and to compel arbitration, *see* ECF No. 16.  On July 24, 2024, the Tennessee district court resolved those motions by granting WarnerMedia's motion to transfer the case here and denying the motions to remand the case and to compel arbitration as moot.  *See Lalewicz v. WarnerMedia Direct, LLC* ("*Lalewicz I*"), No. 24-CV-44 (TRM), 2024 WL 3640409 (E.D. Tenn. July 24, 2024).

The Tennessee district court agreed with the parties that Lalewicz's claim fell under the "Dispute Resolution" section of the Terms of Use.  *Id.* at *3.  Thus, the court concluded, Lalewicz "was within his contractual rights to pursue a claim in small claims court instead of arbitration."  *Id.*  But because "Lalewicz had a contractual right to bring [the] action in small claims court" and availed himself of that right, the court continued, the "dispute was not subject to arbitration when filed."  *Id.* at *4.  For that reason, the court held, the "Governing Law and Venue" section of the Terms of Use, which provides that any "dispute that is not subject to arbitration" is required to be "brought in the appropriate state or federal court located in New York County, New York," came into play.  *Id.* at *3.  The Tennessee district court therefore transferred the case to this Court.  Once here, the parties renewed their motions to remand the case and to compel arbitration.  *See* ECF Nos. 43, 44.  On February 24, 2025, the Court held oral argument on the motion to remand.  *See* ECF Nos. 65, 63.

## DISCUSSION

"On a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper."  *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (internal quotation marks omitted); *see also Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021).

In this case, whether removal was proper or remand is warranted turns on the meaning of the Terms of Use — that is, on an interpretation of the parties' contracts. Under New York law — which governs, *see, e.g.*, HBO Max Oct. 19, 2021 Terms 56 (stating that the Terms of Use are governed by New York law) — "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002) (citation omitted); *accord In re Delta Air Lines Inc.*, 608 F.3d 139, 146 (2d Cir. 2010). "The best evidence of what parties to a written agreement intend is what they say in their writing" — that is, the text of the contract itself. *Greenfield*, 98 N.Y.2d at 569 (cleaned up); *accord Delta Air Lines*, 608 F.3d at 146. Significantly, however, individual provisions of a contract should be construed "not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby." *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009). Further, a court must avoid any interpretation that would be "'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'" *Landmark Ventures, Inc. v. Wave Sys. Corp.*, No. 11-CV-8440 (PAC), 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012) (quoting *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (N.Y. App. Div. 1st Dep't 2003)), *aff'd*, 513 F. App'x 109 (2d Cir. 2013) (summary order).

In a dispute over the meaning of a contract, the threshold question is whether the contract terms are ambiguous. *See, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). A contract is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (alteration adopted) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889

F.2d 1274, 1277 (2d Cir. 1989)).  By contrast, "ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012).  In general, ambiguous or "equivocal contracts will be construed against the drafters."  *Albunio v. City of New York*, 23 N.Y.3d 65, 71 (2014); *accord Rynasko v. New York Univ.*, 63 F.4th 186, 200 (2d Cir. 2023).  That principle — known as *contra proferentum* — has particular force when it comes to a contract of adhesion (that is, a standard-form contract drafted and offered by the party with superior bargaining power).  *See, e.g.*, *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2d Cir. 1985); *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 n.2 (2d Cir. 1983); *see* 8 Williston on Contracts § 18:8 (4th ed. 2024) (defining a contract of adhesion); *cf. Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 186 (2019) (stating that *contra proferentum* is born from "equitable considerations about the parties' relative bargaining strength").

Here, the parties' arguments turn on the meaning of the provision in the Terms of Use that allows a party to bring a claim that would otherwise be subject to arbitration in small claims court.  As noted above, the earlier versions of the Terms of Use provide on that score that, notwithstanding the provisions requiring arbitration, "either party *may bring an action in small claims court* seeking only individualized relief, *so long as the action remains in that court and is not removed or appealed to a court of general jurisdiction*."  *See, e.g.,* HBO Max Apr. 29, 2020 Terms 35 (emphases added).  To the extent relevant here, the later versions provide instead that "either party *may elect to have claims heard in small claims court* seeking only individualized

relief, *so long as the action is not removed or appealed to a court of general jurisdiction*." *See, e.g.,* Max Feb. 27, 2024 Terms 9 (emphases added).  The parties' dispute hinges on the meaning of the "so long as" clause in these provisions.  Lalewicz reads the "so long as" clause to prohibit removals and appeals of cases that are filed in small claims court.  ECF No. 50 ("Pl.'s Remand Reply"), at 3.  In other words, he reads the provisions to say that either party may bring an action in small claims court but that action must stay and be fully resolved there.  By contrast, WarnerMedia reads the clause to mean that that an action may be brought in small claims court but that the action may remain there only until the other party either removes or appeals it.  In other words, WarnerMedia contends, the relevant provisions of the "[t]erms expressly permit Defendant to remove an action filed in small claims court."  Def.'s Remand Opp'n 9.

If the "so long as" clause were considered in isolation, either party's reading would be plausible.  That is because the meaning of the phrase "so long as" can vary by context.  Consider two examples, one of which supports WarnerMedia's reading and one of which supports Lalewicz's.  First, consistent with WarnerMedia's argument, a parent might say to her child: "You may play outside so long as it doesn't start raining."  The plain meaning of this statement is that the child is allowed to play outside but that the permission will evaporate if it starts raining.  In other words, the permission granted by the first part — "you may play outside" — lasts only until the second part — "so long as it doesn't start raining" — occurs.  Second, consistent with Lalewicz's argument, a parent might say to her child: "You may go to the movies so long as you don't stay out late afterwards."  In this case, the first clause — "you may go to the movies" — grants permission, while the second — "so long as you don't stay out late afterwards" — clarifies that that permission is conditioned on (prior) acceptance of a limitation on that permission.  In each case, "the 'so long as' clause . . . introduce[s] a condition that

narrows the broader initial proposition." *Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*, 773 F.3d 110, 115 (2d Cir. 2014); *see United States v. Dion*, 37 F.4th 31, 37 (1st Cir. 2022) ("'So long as' is familiar language and bears the same meaning as 'provided that.'  That phrase introduces a condition.").  The difference lies in the nature of the condition.

For several reasons, the Court concludes that Lalewicz's reading of the phrase as it is used in the Terms of Use — i.e., in context — is the better of the two.  First, WarnerMedia's reading is difficult to reconcile with the early versions of the Terms of Use, in which the initial permission granted is to "*bring* an action in small claims court."  *See, e.g.,* HBO Max Apr. 29, 2020 Terms 35 (emphasis added).  "To 'bring an action' is to 'institute legal proceedings.'" *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 172 (2d Cir. 2018) (quoting Black's Law Dictionary 231 (10th ed. 2014)); *accord Gibbs v. Ryan*, 160 F.3d 160, 162 (3rd Cir. 1998) ("In the context of filing a civil action, 'bring' ordinarily refers to the 'initiation of legal proceedings in a suit.'" (quoting Black's Law Dictionary 192 (6th ed. 1990))).  The act of bringing a lawsuit is thus already complete when the opportunity to remove or appeal the lawsuit arises.  It would make no sense to say, as WarnerMedia would have it, that removal, for example, constitutes withdrawal of the otherwise explicit permission to *bring* an action in small claims court in the first instance.  Because, by definition, removal or appeal occurs after the lawsuit has been brought, neither act can, as a matter of law or logic, retract permission to bring the suit in the first instance.  It makes much more sense to read the phrase to mean that the permission to "bring" is conditioned on (prior) acceptance of the subsequent limitation — namely, that it is conditioned on the lawsuit not later being removed or appealed.

Granted, this reason for reading "so long as" as Lalewicz proposes loses some force with the later versions of the Terms, which differ insofar as they grant permission for a party to "have

claims heard" in small claims court rather than to "bring" them there.  *See, e.g.*, HBO Max Dec. 20, 2022 Terms 33.  But even in these later versions, the reference to appeals makes little sense for the same reason.  That is, an appeal, of course, occurs after a case has already been heard and resolved in the court of first resort.  It follows that an appeal from small claims court cannot withdraw permission for the claim to be "heard" there — at the point of appeal, the process of "being heard" is already complete.  To highlight the point: If the Terms referred only to appeal, and not to removal, it is unlikely anyone would read the phrase "you may elect to have your claim heard in small claims court so long as it is not appealed" to mean, as WarnerMedia would have it, that appeal of the claim was expressly allowed.  Instead, the natural reading would be Lalewicz's: that the permission to have a case heard in small claims court was conditioned on a prior understanding that it could not be appealed.  Thus, even in the later versions of the Terms, Lalewicz's reading is the more compelling of the two.

The "context of the entire integrated agreement" between the parties also favors Lalewicz's reading.  *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000).  Most significantly, all six versions of the Terms of Use include a clause explicitly stating that the parties agree to resolve disputes through arbitration or small claims court "*instead of* in courts of general jurisdiction."  *E.g.*, HBO Max Apr. 29, 2020 Terms 33 (emphasis added).  That clause plainly evinces an intention that cases will not be resolved in a court of general jurisdiction (such as this one), which challenges, if not undermines, WarnerMedia's understanding of the "so long as" clause to "expressly permit" removal to federal court.  Def.'s Remand Opp'n 9.  When pressed at oral argument, WarnerMedia's sole response to this point was to contend that removal or appeal would simply provide for an opportunity for the removing or appealing party to then move in a court of general jurisdiction to compel arbitration.  *See, e.g.*,

ECF No. 63 ("Oral Arg. Trans."), at 27.  In other words, the case would not be "resolved" in a court of general jurisdiction; such a court would simply serve as a waystation to enforce the arbitration provisions of the parties' agreement.

But "if that was the parties' intent" — to allow either party to bring an action in small claims court but subject to the other party's right to compel arbitration — "it would have been easy to include such language" in the Terms.  *Glob. Brass & Copper, Inc. v. Olin Corp.*, No. 11-CV-7837 (PGG), 2013 WL 12617417, at *6 (S.D.N.Y. Sept. 17, 2013).  Moreover, such an interpretation would produce strange results — and it is well established "that a contract should not be interpreted to produce an absurd result."  *Cole v. Macklowe*, 99 A.D.3d 595, 596 (N.Y. App. Div. 1st Dep't 2012) (internal quotation marks omitted).  For instance, if a suit were filed in small claims court, the other party could sometimes still immediately compel arbitration — but only if the suit happened to fall within the jurisdiction of federal courts.  *See, e.g.*, *Teamsters Loc. 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*, 906 F.3d 260, 264 (2d Cir. 2018) ("[A]n action is removable if it originally could have been brought in a federal court.").  And once a small claims court decided the case filed there, the losing party could still sometimes compel arbitration — but only if the state's small claims regime allowed such a suit to be appealed.  *See, e.g.*, *Esposito v. Tony's Long Wharf Servs., LLC*, 901 A.2d 82, 84 n.2 (Conn. App. Ct. 2006) ("There is no right of appeal from a small claims judgment."); *Clusiau v. Clusiau Enters., Inc.*, 236 P.3d 1194, 1197 (Ariz. Ct. App. 2010) ("There is no right of appeal from a judgment entered in small claims court.").  There is no evidence that the parties intended such an obfuscatory, convoluted, and arbitrary scheme.

Many of the cases to which WarnerMedia cites in support of its position only underscore the point.  For example, WarnerMedia cites *Jenkins v. First American Cash Advance of Georgia,*

*LLC*, 400 F.3d 868 (11th Cir. 2005), in which the agreement provided that "[a]ny appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration," ECF No. 59-1, and *Villalobos v. EZCorp, Inc.*, No. 12-CV-852 (SLC), 2013 WL 3732875, at *4 (W.D. Wis. July 15, 2013), in which the agreement stated that "[a]ny appeal of a judgment from [a small claims court] shall be resolved in binding arbitration."  ECF No. 59, at 2-3.  It also relies on cases concerning agreements with language such as "[i]f there is an appeal from small-claims court, or if a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will only be heard by an Arbiter," *Farr v. Acima Credit LLC*, No. 20-CV-8619 (YGR), 2021 WL 2826709, at *2 (N.D. Cal. July 7, 2021), and "[a]ny appeal of a judgment from a small claims tribunal *shall* be resolved *de novo* by binding arbitration,"  *Furgason v. McKenzie Check Advance of Indiana, Inc.*, No. IP 00-121-C H/G, 2001 WL 238129, at *8 & n. 1 (S.D. Ind. Jan. 3, 2001) (emphasis in original).  But the language in each of these agreements does what the language in the Terms of Use here does not: It openly states in plain terms that any appeal from a small claims court would be resolved through arbitration.  None of these agreements relied on the sort of convolution that WarnerMedia urges the Court to read into the agreements here: that a small claims judgment can be appealed to a court of general jurisdiction, but because of separate language forbidding litigation in such a court, the parties may then move to compel arbitration, at which point the appeal could be heard.

WarnerMedia also cites two out-of-circuit, unpublished opinions in suits filed by *pro se* litigants: *Davis v. Ally Fin. Inc.*, No. 23-CV-22897 (RMB) (MJS), 2024 WL 2239144 (D.N.J. May 17, 2024), and *Beautyman v. Lilyandmajor, LLC*, No. 20-CV-81290 (DMM), 2021 WL 1264228 (S.D. Fla. Feb. 1, 2021).  Def.'s Remand Opp'n 14.  In some respects, the language of the agreements in these cases comes closer to the language at issue here.  *See Davis*, 2024 WL

2239144, at *4 ("You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court."); *Beautyman*, 2021 WL 1264228, at *6 ("Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim."). But the agreements in these cases did not include language similar to the provision discussed above, most notably the separate provision expressly precluding litigation in a court of general jurisdiction that favors Lalewicz's reading of the Terms of Use at issue here. Moreover, in neither case was WarnerMedia's argument raised by the parties (although the court in *Beautyman* did end up adopting a reading of the "so long as" clause akin to WarnerMedia's despite the lack of any argument on point), and in *Davis*, the *pro se* plaintiff never even cited the relevant language in seeking remand. *See Beautyman*, No. 20-CV-81290, ECF Nos. 10, 19; *Davis*, No. 23-CV-22897, ECF Nos. 9-1, 14. Thus, the courts were not presented with the arguments that the parties make here. Put simply, WarnerMedia cites, and the Court has found, no decision in which a court was squarely presented with contractual language and arguments analogous to those at issue here and adopted WarnerMedia's position.

Finally, even if the Court were to conclude that Lalewicz and WarnerMedia offered equally plausible readings of the "so long as" clause in the Terms of Use, the result would be the same. That is because the Terms of Use would be ambiguous and, under the doctrine of *contra proferentum*, such ambiguity would be construed against the drafter, WarnerMedia. *See JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 611 F. Supp. 2d 389, 390 (S.D.N.Y. 2009).[3] Notably,

---

[3]    Whether *contra proferentum* applies to a contractual waiver of the right to remove is arguably unclear. That is because some courts have stated that "any waiver of a right of removal must be clear and unequivocal." *JP Morgan Chase Bank*, 611 F. Supp. 2d at 390 (internal quotation marks omitted). But many of those courts have, in the same breath, also stated that

the rationale for the doctrine of *contra proferentum* is at its strongest — and, perhaps not surprisingly, the doctrine is most frequently applied — when a contract is one of adhesion.  *See* Tal Kastner & Farshad Ghodoosi, *Against the Drafter: An Empirical and Theoretical Analysis of the Doctrine of* Contra Proferentem, Fordham L. Rev. (forthcoming 2026) (manuscript at 60, 63) (surveying courts' application of the doctrine across transactional contexts), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5320483.   That is the case here. WarnerMedia exercised complete control over the language of the Terms of Use.  Indeed, it unilaterally amended the parties' contract terms — including amendments to the requirements to opt out of changes to the Terms — no fewer than five times while Lalewicz was a subscriber.  It could have clearly and explicitly provided (as the contract drafters did in some of the cases upon which WarnerMedia relies) that the right to file a case in small claims court could be overridden by the other party's right to remove a case to federal court and then compel arbitration.  But it chose instead to leave language in every applicable version of the Terms of Use that, at best, was ambiguous and, at worst, was designed to hide the ball by reasonably suggesting to subscribers

---

"[i]f a forum selection clause is ambiguous in that it is susceptible of two meanings, it will be construed against the party who drafted it."  *Id.*; *compare, e.g.*, *Unity Creations, Inc. v. Trafcon Indus.*, Inc., 137 F. Supp. 2d 108, 111 (E.D.N.Y. 2001) (stating both standards and concluding the right to remove had not been waived), *with Yakin v. Tyler Hill Camp, Inc.*, No. 07-CV-2444 (SJF), 2007 WL 3353729, at *2 (E.D.N.Y. Nov. 6, 2007) (stating both standards and concluding the right to remove had been waived), *aff'd on other grounds sub nom. Yakin v. Tyler Hill Corp.*, 566 F.3d 72 (2d Cir. 2009).  Compounding matters, the Second Circuit has decided some cases in this area without invoking either of these interpretive principles.  *See, e.g.*, *Rabinowitz v. Kelman*, 75 F.4th 73 (2d Cir. 2023).  Given that the Terms of Use are subject to New York law, the Court is inclined to conclude that the standard principles of contractual interpretation — which include *contra proferentum* — apply.  *See, e.g.*, *Yakin*, 566 F.3d at 76 (holding that forum selection clauses — even those that waive the right to remove — are "to be interpreted in accordance with accepted principles of contract construction").  Moreover, it would be odd, if not absurd, to apply one interpretive principle to the "so long as" clause for purposes of removal and a contrary principle to the same clause for purposes of appeal.  In any event, the Court need not ultimately resolve the uncertainties in the case law because, for the reasons discussed above, it concludes that Lalewicz's reading of the Terms is the more natural one.

that they had the right to litigate certain claims in their chosen, local, fora without risk of removal or appeal.  In these circumstances, the Court cannot permit WarnerMedia to benefit from any ambiguity of its own making.

WarnerMedia's remaining arguments fail to rescue its preferred reading of the parties' contracts.  First, it argues that this lawsuit "raises issues of arbitrability that," under the Terms of Use, "must be resolved by this Court."  Def.'s Remand Opp'n 12; *see, e.g.*, Max Feb. 27, 2024 Terms 12 (consenting to "the exclusive jurisdiction and venue of the state or federal courts in . . . New York for the adjudication of all non-arbitral claims" or "issues involving arbitrability").  It is certainly true that if either party is "aggrieved by the . . . refusal of [the other party] to arbitrate" a dispute defined as arbitrable under the Terms of Use — including, for example, by "commenc[ng] litigation" in in improper forum — that party may "petition" a federal district court "for an order directing that such arbitration proceed in the manner provided for" in the Agreements.  9 U.S.C. § 4; *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (quoting *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984)).  But to accept WarnerMedia's reading of the Terms would all but vitiate the contractual right of "either party [to] elect to have claims heard in small claims court seeking individualized relief."  *E.g.,* Max Feb. 27, 2024 Terms 9.  That is, the Terms themselves provide that certain claims that are otherwise subject to mandatory arbitration can, "[n]otwithstanding" that mandate, be brought in small claims court.  *E.g., id.*  That explicit carveout would be worth little if it could overridden as soon as the opposing party uttered the word "arbitrability."

Next, relying on the three most recent versions of the Terms of Use, WarnerMedia argues that Lalewicz "has not complied with the conditions precedent to filing in small claims court under the Terms."  Def.'s Remand Opp'n 15.  The three more recent versions of the Terms differ

from the earlier versions in two relevant ways.  First, while the earlier versions of the Terms required only a "party who intends to seek arbitration" to file a notice of claim, the three more recent versions extend that obligation to a party who intends to "file a claim in small claims court."  *Compare*, *e.g.*, HBO Max Nov. 1, 2022 Terms 34, *with* HBO Max Dec. 20, 2022 Terms 34.  Second, these later versions of the Terms expand the information that must be included in a notice of dispute.  *Compare*, *e.g.*, HBO Max Nov. 1, 2022 Terms 34 (requiring name, contact information, "description of the . . . claim," "relief sought," a signature, and a statement authorizing disclosure of account details to the subscriber's attorney), *with* HBO Max Dec. 20, 2022 Terms 34 (additionally requiring "subscription history" and "status," "facts pertaining to . . . use of [the Platforms]" and the device used to watch it, and "a personally signed statement . . . verifying the accuracy of the . . . Notice").  WarnerMedia argues that Lalewicz's notice failed to meet the expanded requirements in the more recent Terms and, thus, he was not entitled to "commenc[e] an action in small claims court."  Def.'s Remand Opp'n 16.

As a preliminary matter, the parties disagree about whether the three most recent versions of the Terms of Use are even applicable to Lalewicz.  On the one hand, Lalewicz attempted to opt out of these updates pursuant to language in the Terms themselves.  *See* ECF No. 49-6; HBO Max Nov. 1, 2022 Terms 38-39; *see also, e.g.*, *Erwin v. Citibank, N.A.*, No. 16-CV-3040 (GPC), 2017 WL 1047575, at *4 (S.D. Cal. Mar. 20, 2017) (stating that a similar opt-out was effective if received).  On the other hand, at least one court has held that such an opt-out is ineffective where, as here, a subscriber continued to use the relevant Platform.  *See Brooks v. WarnerMedia Direct, LLC*, No. 23-CV-11030 (KPF), 2024 WL 3330305, at *15 (S.D.N.Y. July 8, 2024).  But even if the more recent Terms of Use do apply to Lalewicz, the propriety of his suit in Tennessee small claims court can be determined by "the only court entitled to hear the merits of

[Lalewicz]'s dipute — the small claims court in Tennessee." Pl.'s Remand Reply 10. To hold otherwise — to conclude that a subscriber may file suit in small claims court but that election can be overridden if the case could have been filed in federal court and WarnerMedia questions the sufficiency of the subscriber's pre-filing notice — would "not pass the straight face test." *Id.*

WarnerMedia's final argument is perhaps its most substantial: that, pursuant to the law of the case doctrine, "the Eastern District of Tennessee's order transferring" the case to this Court "forecloses Plaintiff's requested remand" to Tennessee small claims court because that court concluded that, although Lalewicz was allowed to file in small claims court, he was limited to a small claims court in New York. Def.'s Remand Opp'n 19-20; *Lalewicz I*, 2024 WL 3640409, at *3-4. In so holding, no less, the Eastern District explicitly stated that "Tennessee small claims court was not an option" for Lalewicz. *Lalewicz I*, 2024 WL 3640409, at *4. The Court agrees with WarnerMedia that these statements are not mere dicta, as they formed the basis of the Eastern District's decision to transfer the case here. *See id.* ("Lalewicz was required to bring this action in New York and did not do so. Therefore, the Court must transfer the case[.]"). But "[l]aw of the case is a discretionary doctrine, and its application within a case depends . . . on the context in which the court made its first ruling." *Choi v. 37 Parsons Realty LLC*, 642 F. Supp. 3d 329, 333 (E.D.N.Y. 2022); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The law of the case doctrine is admittedly discretionary[.]"). For two independent reasons, the Court declines to apply the doctrine here.

First, its statements notwithstanding, the Eastern District expressly declined to rule on Lalewicz's motion to remand the case to Tennessee small claims court. *See Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 5-CV-281 (RLB), 2011 WL 611802, at *8-9 (E.D. Pa. Feb. 17, 2011) (declining to adhere to the law of the case where the previous court

"expressly limited its holding"), *aff'd*, 687 F.3d 620 (3d Cir. 2012). Second, and in any event, the Court respectfully disagrees with the reasoning of the Eastern District. The Eastern District rested its conclusion on the forum-selection provision in the Terms of Use, which provides as follows:

> *A dispute that is not subject to arbitration* under [the "Dispute Resolution" section] of these Terms shall be brought in the appropriate state or federal court located in New York County, New York; and we and you each irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts in New York County, New York for the adjudication of all non-arbitral claims.

*Lalewicz I*, 2024 WL 3640409, at *3 (emphasis added). In the Eastern District's view, this provision called for transfer to a New York court because Lalewicz brought his claim in small claims court and, thus, it "was not subject to arbitration when filed." *Id.* at *4. But the fact that Lalewicz availed himself of the small claims court carveout in the Terms of Use does not mean that his case was not "subject to arbitration when filed." To the contrary, it is undisputed that his claim fell squarely within the contract's definition of "claims subject to arbitration," which excludes only "claims arising from bodily injury" or those involving "intellectual property rights." *E.g.*, HBO Max Apr. 29, 2020 Terms 34; *see* HBO Max Oct. 19, 2021 Terms 44; HBO Max Nov. 1, 2022 Terms 32; HBO Max Dec. 20, 2022 Terms 32; Max May 23, 2023 Terms 27; Max Feb. 27, 2024 Terms 9. By its terms, therefore, the forum-selection clause calling for adjudication in a New York court does not apply, let alone call — as the Eastern District's holding would have it — for the adjudication of subscribers' claims from all fifty states in New York small claims court. That is a "cogent [and] compelling reason[]" to "deviate" from "the law of the case doctrine" here. *In re Int. Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698, 703 (S.D.N.Y. 2018); *see also Ingenco Holdings, LLC v. ACE Am. Ins. Co.*, No. 13-CV-00543 (RAJ), 2022 WL 716880, at *12 (W.D. Wash. Mar. 10, 2022) (concluding that the "law of the case doctrine [did] not preclude" the court's "reassess[ment]" of a question of "contract

interpretation" where "conceptual" issues with previous decision "militate[d] in favor of a different interpretation").

## CONCLUSION

In short, although the question is a close one, the Court concludes that the Terms of Use prohibited WarnerMedia from removing this case from Tennessee small claims court. Accordingly, Lalewicz's motion to remand the case back to that court must be and is GRANTED. *See, e.g.*, *Wilde v. Merck*, No. 12-CV-3953 (JFK), 2013 WL 603187, at *1 (S.D.N.Y. Feb. 14, 2013) (granting plaintiff's motion to remand action to Pennsylvania state court, from which the case had been removed to the Western District of Pennsylvania before transfer to this District); *Rubin v. MasterCard Int'l, LLC*, 342 F. Supp.2d 217, 218, 221 (S.D.N.Y. 2004) (granting plaintiff's motion to remand action to Florida state court, from which the case had been removed to the Southern District of Florida before transfer to this District); *see also* 28 U.S.C. § 1447(d) (discussing an order remanding a case "to the State court from which it was removed"). In light of that disposition, WarnerMedia's motion to compel arbitration is DENIED as moot. *See, e.g.*, *Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 224 (S.D.N.Y. 2016).

The Clerk of Court is directed to terminate ECF Nos. 43, 44 and to remand this case to the General Sessions Court of Coffey County, Tennessee.

SO ORDERED.

Dated: July 2, 2025
New York, New York

_____
JESSE M. FURMAN
United States District Judge